Evelyn Meyers WENZELBURGER
(Plaintiff), Appellant,

v.

John Fred WENZELBURGER (Defendant),
Respondent,

J. Fred Wenzelburger, Jr., and Bettie Wen-
zelburger, his wife, Jacob Gass and Grace
Gass, his wife, Richard O. Rumer, Linda
Laster, and Rumer Realty Company, a Cor-
poration, Defendants.

No. 29602.

St. Louis Court of Appeals.

Missouri.

Dec. 4, 1956.

Philip A. Foley and William J. Hough, Clayton, for appellant.

Hans Wulff, and William W. Sleater, Jr., St. Louis, for respondent.

MATTHES, Judge.

From an adverse judgment following trial, plaintiff appealed to the Supreme Court. Upon motion of John Fred Wenzelburger, one of the defendants and the respondent, the Supreme Court transferred the cause to this court.

Plaintiff alleged in her petition that prior to October 1, 1949, in contemplation of her marriage to the defendant John Fred Wenzelburger, she acquired title to a certain parcel of real estate situated in St. Louis County, Missouri; that on August 20, 1948, plaintiff conveyed the property by quitclaim deed to J. Fred Wenzelburger, being the same person as defendant John Fred Wenzelburger; that she and said defendant were married on August 1, 1949, and divorced by decree of the Circuit Court of St. Louis County on July 27, 1951. It is also alleged that between June 22, 1948, and March 10, 1950, plaintiff advanced the sum of $2,491.-26 to defendant John Fred Wenzelburger "as part of the cost of construction of a residence building on the aforesaid land * * *". As the basis for the cancellation of the deed executed by plaintiff on August 20, 1948, it was averred that defendants John Fred Wenzelburger, J. Fred Wenzelburger, Jr. (son of John Fred Wenzelburger), and Bettie Wenzelburger forged and altered the deed by changing "Fred Wenzelburger to J. Fred Wenzelburger, Jr., as the grantee thereof". There was also an averment that defendants Jacob Gass and Grace Gass, his wife, have or claim some title in the property by reason of warranty deed dated September 27, 1951, recorded September 28, 1951, and that defendants Richard O. Rumer, Linda Laster, and Rumer Realty Company, a corporation, also claimed an interest in the property. Plaintiff prayed for cancellation of the deed executed by her; that the court "ascertain and determine the interest of the various parties plaintiff and defendant"; that the interest of plaintiff be declared paramount to the interests of the defendants in said property, and for general relief.

Apparently plaintiff was satisfied following the judgment in favor of all of the defendants that the evidence had established conclusively that defendants Jacob Gass and his wife, Grace, were purchasers of the property for value and without notice of any claim of interest therein by plaintiff. This is best demonstrated by plaintiff's motion for new trial, which we construe as attacking the action of the trial court in dismissing the petition as to defendant John Fred Wenzelburger, in which motion plaintiff prayed the court to enter an order that said defendant was possessed of $5,500 "and held the same as a *resultant* trust for the plaintiff". The abandonment by plaintiff of the specific relief prayed for, which would have directly affected title to real estate, precipitated the action which resulted in the transfer of the cause to this court. Since all of the defendants except John Fred Wenzelburger have passed out of the case by reason of the abandonment of any claim to the real estate, we shall refer to the parties as plaintiff and defendant.

The only point presented by plaintiff is that "a resulting trust was established by plaintiff by clear, cogent and convincing testimony in the acts, conduct and circumstances existing". It is obvious that plaintiff's precise contention is that the proof was sufficient to support a resulting trust in the land if it had not reached the hands of innocent purchasers, and consequently the funds derived by defendant from sale of the property should be impressed with such a trust. From what has been said it is clear that this theory is not consistent with the specific relief sought in her petition. Because of this circumstance defendant insists there is nothing for this court to consider. While this contention is not without

merit, nevertheless where, as here, there is a prayer for general relief, a court of equity is authorized to adjust the rights of the parties as established by the evidence. Ridenour v. Duncan, Mo.Sup., 291 S.W.2d 900, loc. cit. 907. A corollary principle is that when a court of equity is rightfully possessed of a cause, it will not relinquish jurisdiction short of doing complete justice. Selle v. Selle, 337 Mo. 1234, 88 S.W.2d 877, 883. Since this is an action in equity and we have the duty to try the case anew upon the record, we will consider the question as though the pleadings had been framed to specifically include the point presented.

■ From the painstaking examination we have made of the voluminous record, consisting of 412 pages and the numerous exhibits, we have reached the conclusion that plaintiff's theory cannot be sustained. A review of the pertinent facts will demonstrate the fallacy of plaintiff's contention.

On June 20, 1949, Ruth Wenzelburger, who was Fred's former wife, divorced him. Following this event, and on August 1, 1949, plaintiff and defendant were married. While defendant was still the husband of Ruth, he and plaintiff discussed the purchase of real estate in St. Louis County, Missouri. This led to the execution on June 2, 1948, of an earnest money contract between defendant designated therein as the purchaser, and the owner of the property. The consideration expressed in the contract was $4,250. Defendant issued his check on the date the contract was entered into for $100 as the earnest money payment. On June 24, 1948, the transaction was consummated. On that date defendant issued his check for the balance of cash payment due under the earnest money contract. The deed conveyed the record title to plaintiff. It is unnecessary to elaborate upon the conflicting testimony of plaintiff and defendant as bearing upon the reason the title to the property was placed in plaintiff's name. It is important to observe, however, in connection with plaintiff's theory that she testified, "Fred Wenzelburger said he would put the property in my name so I would have some security after I gave him this money to *start building on this property*". Defendant's position, which we deem more consistent and logical in light of all the other facts and circumstances, was that the title was placed in plaintiff's name only because defendant's wife, Ruth, might acquire an interest in the property if the title thereto was placed in defendant. A loan secured by a deed of trust on the property was negotiated whereby the balance of the purchase price of $3,250 was acquired. On August 20, 1948, plaintiff signed and duly acknowledged the quitclaim deed whereby the record title was conveyed to J. Fred Wenzelburger, Jr. There was much testimony pro and con on the question of whether some one had changed the name of the grantee from Fred Wenzelburger to J. Fred Wenzelburger, Jr. Inasmuch as plaintiff is no longer seeking cancellation of that deed, the question relating to the alteration of the grantee's name is moot, and we will give no further consideration thereto. On December 21, 1950, J. Fred Wenzelburger, Jr., and wife, by quitclaim deed, conveyed the property to defendant, who, on September 27, 1951, sold it to Jacob Gass and wife.

Plaintiff testified that on eleven different occasions between June 22, 1948, and March of 1950, she gave money to defendant totaling $2,491.26. She did not contend, however, that the amount constituted the consideration for the purchase of the property. To the contrary, and without equivocating, she testified the money was furnished to defray cost of making improvements—"to improve the property", * * * "it was money toward building up this property", and she said that defendant told her that he would improve the property, sell it and give her half of the profit derived therefrom.

In October, 1950, plaintiff left defendant. On March 14, 1951, defendant instituted a divorce action against plaintiff, which terminated in a decree of divorce being rendered in favor of defendant on July 27, 1951. Plaintiff testified that about two weeks prior to the time that she executed

the entry of appearance in the divorce suit, defendant informed her that if she would sign the entry of appearance, he would "finish this property and I will give you half of the interest".

A detailed summary of defendant's testimony is unnecessary. It is entirely sufficient to say that he categorically denied receiving any funds from plaintiff at any time or for any purpose; denied that he ever told plaintiff, or agreed, that upon the sale of the property by him he would split the profit with her.

■ A resulting trust is created by operation of law from the facts of the transaction and not from an agreement, from what the parties do and never from what they agree to do. Purvis v. Hardin, 343 Mo. 652, 122 S.W.2d 936, loc. cit. 938, 939; Parker v. Blakeley, 338 Mo. 1189, 93 S.W. 2d 981, loc. cit. 988; Woodard v. Cohron, 345 Mo. 967, 137 S.W.2d 497, loc. cit. 498.

■ One of the instances in which a resulting trust arises is where the property is purchased and the purchase price is paid by one person and at his direction the vendor transfers the property to another, Dee v. Sutter, Mo.App., 222 S.W.2d 541, loc. cit. 542; Bogert, Trusts and Trustees, Vol. 2A, § 454, p. 419. See, also, Purvis v. Hardin, supra, where the court considered a number of cases and enumerated the circumstances which will support a resulting trust. Therein it is said that the test is the *true ownership of the consideration upon which title rests.*

■ While the law of resulting trusts is usually invoked and applied to real estate transactions, it has been extended to personal property. Dee v. Sutter, supra.

■ Of utmost importance in determining the instant question is the firmly established principle that a resulting trust must arise, if at all, from the state of facts which occur anterior to or at the time the legal title to the property is acquired, Welborn v. Rigdon, Mo.Sup., 231 S.W.2d 127,

loc. cit. 133; Parker v. Blakeley, supra; 89 C.J.S., Trusts, § 111, p. 961; such a trust cannot be created by a subsequent expenditure of money in improving the property, and the mere fact that one person's money is used in making the improvements on another's land does not give rise to a resulting trust in favor of the former on such land for the money so used. Welborn v. Rigdon, supra; 89 C.J.S., Trusts, § 111, p. 961; Bogert, Trusts and Trustees, Vol. 2A, § 455, p. 444.

■ Plaintiff's theory is not predicated on the contention that true ownership of the consideration upon which title vested was in her, indeed it was not asserted in the trial court or here that any portion of the purchase money came from plaintiff. Rather, her position is that having advanced money to defendant which was used by him in placing a building upon the land, a foundation was thereby laid for a resulting trust. Assuming without deciding that plaintiff did advance funds to defendant for the stated purpose, we cannot hold that a resulting trust arose in her favor. This for at least two reasons. As pointed out in the authorities cited, supra, the facts upon which plaintiff rely must have occurred prior to or at the time title was acquired. Herein the money for improvements was advanced subsequent to passing of title. In the second place, a trust cannot be created in favor of one who furnishes money in making improvements on another's land, which is precisely this case. Welborn v. Rigdon, supra; 89 C.J.S., Trusts, § 111, p. 961; Bogert, Trusts and Trustees, Vol. 2A, § 455, p. 444.

Since plaintiff failed to establish that she was entitled to have the land impressed with a resulting trust in her favor, it must necessarily follow that the funds derived by defendant from the sale of the property should not be subjected to such a trust. Accordingly the judgment should be and is affirmed.

ANDERSON, P. J., and SAM C. BLAIR, Special Judge, concur.