Peter A. ISENMAN, Appellant,

v.

Francis X. SCHWARTZ, Rita M. Schwartz, and Fred Geiler, Respondents.

No. 47284.

Supreme Court of Missouri,

Division No. 1.

May 9, 1960.

Morton L. Schwartz, Robert A. Thomann, and Louis E. Zuckerman, St. Louis, for appellant.

McClintock & Medley, Flat River, for respondents.

HOLMAN, Commissioner.

On April 12, 1952, the owners of a 330-acre tract of land referred to as the "Herman Farm" conveyed same to plaintiff Peter A. Isenman, and defendant Francis X. Schwartz, for a consideration of $16,-000. In the first count of his petition in this action plaintiff sought a decree (1) enforcing a resulting trust in his favor as to the record interest of said defendant so that plaintiff would be "reinvested" with the absolute fee simple title thereto, (2) compelling defendants to account to plaintiff for all rents and profits arising from said real estate, and (3) enjoining the defendants from the use, occupation, and enjoyment of said premises.

The original defendants in the suit were Francis X. Schwartz (hereinafter referred to as the defendant) and his wife Rita. Rita was made a defendant because of her possible marital rights in the property. After the suit had been pending for some time an amended petition was filed bringing in Fred Geiler as an additional defendant and a second count was added to the petition seeking relief against him. In that count plaintiff sought a judgment against said Geiler, a tenant on a portion of said land, for rent in the sum of $1,180.17. Defendant Geiler filed a counterclaim against plaintiff to recover rental in the sum of $590.09 which he claimed he had overpaid plaintiff. The cause was tried and the court found that plaintiff and Schwartz held title to the land as joint adventurers and denied plaintiff all of the relief he sought except certain injunctive relief which was decreed against defendant. Judgment was entered in favor of defendant Geiler in the sum prayed for upon his counterclaim. Plaintiff has appealed.

We have appellate jurisdiction because the action is one to establish a resulting trust in real estate and hence title to real estate is directly involved. Davis v. Roberts, 365 Mo. 1195, 295 S.W.2d 152.

In March 1952 Francis Schwartz learned that the Herman farm could be bought for $16,000. He approached plaintiff with the proposition that they buy the farm, immediately sell the timber thereon, and then

sell the land and make a quick profit. Plaintiff apparently agreed to the proposal and on March 12, 1952, Schwartz entered into a written contract with the Hermans to buy the farm. Plaintiff furnished the $1,000 which was paid at that time. Shortly thereafter, Schwartz arranged to sell the cedar timber to one Boswell for $4,000 and the oak timber to Mr. Klepzig for $3,000 with the purchasers to have five years in which to remove said timber from the land. In the sale of the oak timber defendant may have been assisted by one Troy Grogan.

The agreement to purchase the farm was consummated on April 12, 1952, and the land was conveyed to plaintiff and Francis Schwartz. The $15,000 balance on the purchase price was obtained in the following manner: $7,000 from the sale of the timber, $7,000 borrowed from the Bank of Bloomsdale upon a note signed by plaintiff, Schwartz, and their wives, secured by a first deed of trust upon the land, and $1,000 furnished by plaintiff.

In regard to the agreement plaintiff testified that "Francis Schwartz, he came up and said if me and Troy Grogan go in with him that we could purchase a farm and it would be a good deal. We'd sell the timber and then sell the farm just in a short time. And so, he said if you let me get on the deed, why, we'll fix that up and split it three ways after we sell the property." His testimony that Grogan had a one-third interest in the deal was corroborated by the testimony of his daughter, Marie Isenman, and by the testimony of Troy Grogan. Plaintiff stated that in 1953 he paid Grogan $1,300 for "his one-third interest in the deal," and a written assignment wherein Grogan assigned his interest to plaintiff was admitted in evidence. Plaintiff testified that neither Grogan nor defendant advanced any of the purchase price. He stated that he paid $4,000 upon the purchase price of the farm but we are of the opinion that he, in fact, paid only $2,000 thereon. His contention

that he paid $4,000 grows out of the fact that he loaned Boswell $2,000 with which to pay for the timber he purchased but it appears that Boswell gave him a note for that amount and later paid plaintiff the amount due on the note. There was considerable testimony by plaintiff as to various amounts of principal and interest he had paid on the note held by the bank, and numerous payments of taxes, insurance, repairs on the farm buildings, and for seed and fertilizer. Some of these payments were made from moneys collected for the rental of the farm and other payments appeared to have been made from his own money. Upon cross-examination plaintiff admitted that defendant had a one-third interest in the "Herman Farm." He also admitted that he and defendant had each paid half of the 1956 taxes on the farm.

Defendant testified that he and plaintiff agreed to purchase the farm and that they were to be partners on a "fifty-fifty" basis and that Grogan had nothing to do with the transaction; that he arranged for the sale of the timber and took the appraisers from the bank to inspect the farm so they could get the loan from the bank; that he and plaintiff both signed the timber deeds conveying the timber to the purchasers; that he did not keep any books but told them (plaintiff and Marie) to keep the books and "whenever the farm was sold we'd split the profits"; that at one time he collected grain rent from Geiler in the amount of $1,129.10 and from that he paid $1,000 on the bank loan and deposited the remainder in plaintiff's account at the bank; that he did work on the farm with a bulldozer of the value of $512.50; that not long after they purchased the farm he obtained from Homer Schmidt an offer for the farm of $12,000, minus the timber that had been sold, which would have given them a $3,000 profit, but that plaintiff would not sell on that basis.

Defendant further testified that early in 1955, after Klepzig and Boswell had gotten all of the timber they wanted from the

farm, he obtained deeds from each of them whereby the right to remove timber (which extended until April 1957) was conveyed to him. He started to cut the remaining timber but on August 15, 1955, the court upon application of plaintiff, issued a temporary injunction which prohibited him from continuing that operation. Upon cross-examination he admitted that upon the sale of the farm whatever amounts plaintiff had advanced out of his personal funds in connection with the farm were to be paid back to plaintiff before the profits were to be divided.

The claim against Geiler in the second count arose out of a controversy concerning the 1956 crop rent. There was no controversy about the fact that Geiler owed rent in the amount of $1,180.18. He accordingly gave plaintiff and defendant each a check for $590.09. Thereafter, plaintiff demanded all of the rent upon the theory that he was the sole owner of the farm and Geiler gave him an additional check for $590.09 "to keep out of a lawsuit." Apparently, by that time, Geiler had been made a defendant and he thereafter filed a counterclaim against plaintiff to recover the last payment of $590.09 which he alleged he did not owe plaintiff.

Plaintiff's first contention is that the court erred in failing to declare a resulting trust for his benefit in the proportion that the sum paid by him at the time the farm was purchased bore to the total purchase price of $16,000.

█ We have recently stated that " 'a resulting trust must arise, if at all, at the instant the deed is taken. Unless the transaction is such that the moment the title passes the trust results from the transaction itself, then no trust results. It cannot be created by subsequent occurrences.' Bender v. Bender, 281 Mo. 473, 220 S.W. 929, 930 * * *. 'A resulting trust, as distinguished from an express trust, is one implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and attend the transaction out of which it arises.' Little v. Mettee, 388 Mo. 1223, 93 S.W.2d 1000, 1009(8); James v. James, Mo.Sup., 248 S.W.2d 623, 627(10). 'As between strangers, a purchase-money resulting trust arises against the grantee of real property in favor of the payor of the purchase money unless it was the payor's intent that no such trust should arise; but the presumption of a resulting trust is rebuttable. * * * This presumption is based upon the sound principle that, absent evidence to the contrary, it is not the intent of any such payor to make a gift to the grantee.' Ferguson v. Stokes, Mo.Sup., 269 S.W.2d 655, 659." Davis v. Roberts, supra, 295 S.W.2d 152, 157. It is also well settled that the evidence required to establish a resulting trust must be clear, cogent and convincing. Dunlap v. Dunlap, Mo.Sup., 218 S.W.2d 108. If a resulting trust is established in a case where a person pays only a part of the purchase price the person so paying acquires a pro tanto interest in the real estate. Davis v. Roberts, supra.

██ The evidence in this case clearly shows that no resulting trust for the benefit of plaintiff was created at the time the farm was purchased. Plaintiff testified that the agreement was that when the property was sold "all the expenses and all the money he had in it" were to be deducted first and the profit divided. Defendant testified to the same effect. The only conflict in their testimony in that regard was whether the profits would be divided "fifty-fifty" as defendant testified, or "three ways" as stated by plaintiff. It is apparent from that testimony that no resulting trust was intended. The testimony of both of said parties clearly indicates that plaintiff was to advance the money for the benefit of the joint venture and was to be repaid when the farm was sold. That arrangement is inconsistent with and negatives the concept and theory of a resulting trust. The conclusion just stated may be illustrated by the following example: If we assume that plaintiff's payment of a portion of the purchase price created a re-

sulting trust for his benefit plaintiff would have acquired a pro tanto interest in the farm (in addition to the one-half interest specifically conveyed to him), and, upon a sale of the land, would not have been entitled to a return of the amount of the purchase money he had advanced (as both parties say was the agreement) but would have been entitled to receive such part of the purchase price as represented his proportionate interest in the farm (one-half conveyed to him plus the assumed resulting trust interest). If the money advanced was in the nature of a loan, as indicated by the evidence in the case at bar, no resulting trust can arise. Adams v. Adams, 348 Mo. 1041, 156 S.W.2d 610.

The remaining contention of plaintiff is that since the court found that plaintiff had made numerous expenditures in connection with the property, and that defendant had wrongfully cut and removed certain timber from the real estate, "and the court having denied the request for a resulting trust in appellant's favor, the court erred in failing to order the alternative relief for an accounting and the appointment of a commissioner or referee to take the same and report to the court for its approval and to adjust the equities further between the parties by charging any sums due from one to the other." The first difficulty arising in regard to that contention is that plaintiff's petition did not contain a prayer for a general accounting between the parties. The petition was drawn on the theory that since plaintiff contributed all of the individual capital that went into the purchase price, and since defendant allegedly did not contribute any of said purchase price, a resulting trust was created in favor of plaintiff as to the whole title to the property and that the record interest of defendant therein should be divested out of said defendant and reinvested in plaintiff. In that situation there was no suggestion in the petition that plaintiff should account for any receipts or expenditures in connection with the transaction. The portion of the prayer relating to an accounting was

that defendant be compelled to account to plaintiff for *all* rents and profits he had received from the farm which were alleged to total $5,402.32. That was in accord with plaintiff's pleaded theory that he was, in fact, the sole owner of the farm and defendant was not entitled to receive anything in the nature of rents and profits therefrom. The petition concluded with a prayer for general relief. There was considerable evidence offered by each party concerning his receipts and expenditures in connection with the purchase and operation of the farm. But that evidence was not offered on the theory that the parties were rendering an accounting, or showing the need for an accounting, but was offered by plaintiff in an effort to show his dominion and control over the farm, thus supporting his claim of sole ownership, and like evidence was offered by defendant as proof of his continued claim of ownership to a one-half interest in the farm.

█ As we have stated, there was no prayer for a general accounting and hence the trial court had no duty to order such an accounting unless it was by reason of the fact that the petition contained a prayer for general relief. In that connection it should be noted that there is nothing in the record to indicate that plaintiff made any request that the trial court order a general accounting. In that situation it is understandable that there is nothing in the findings of fact, conclusions of law, or decree to indicate that the trial court gave any consideration to that question. Defendant has also called our attention to the fact that an accounting at this time could not be a final accounting as the joint venture has not been terminated by a sale of the farm.

█ Since the petition contained no specific prayer for a general accounting, and since the question as to whether such an accounting should have been ordered by virtue of the prayer for general relief was not presented to or expressly decided by the trial court, we rule that under all

the facts and circumstances of this case, principles of equity and justice do not require that this cause be remanded for the taking of a general accounting herein.

The motion of all respondents to dismiss the appeal for violation of S.C. Rule 1.08, 42 V.A.M.S., is overruled. The motion of respondent Geiler to dismiss the appeal because plaintiff had abandoned his appeal as to said defendant is overruled. While no specific contention of error was advanced in regard to the judgment in favor of Geiler, the correctness thereof was necessarily involved in the determination of the contention that plaintiff was the owner of the whole title to the farm. The motion of defendant Geiler for an award of damages for vexatious appeal is also overruled.

The judgment is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.