**William P. DOUGHERTY and William L. Smith, Respondents-Appellants,**

v.

**John R. DUCKWORTH, Rosemary Duckworth and Emma Wenzel, Appellants-Respondents.**

No. 50733.

Supreme Court of Missouri,

Division No. 1.

April 12, 1965.

---

Benson Cytron, Weber & Cytron, House Springs, for defendants, respondents-appellants.

Samuel Richeson, Dearing, Richeson, Weier & Roberts, Hillsboro, for appellants-respondents.

WELBORN, Commissioner.

This is an action to establish a purchase money resulting trust in 120 acres of real estate located in Jefferson County, Missouri. (We will refer to the parties as they appeared in the trial court.) The plaintiffs, William P. Dougherty and William L. Smith, claim to have furnished the money for payment of the purchase price of the property. Title to the property was taken in the names of the defendants John R. Duckworth and Rosemary Duckworth, his wife. Defendant Emma Wenzel is the grantee of a subsequent deed to the property by the Duckworths. In addition to seeking a declaration of a resulting trust in their favor, plaintiffs sought to set aside the deed to Wenzel and to quiet title to the property in themselves. The trial court found a resulting trust for the benefit of plaintiffs in a three-fourths interest in the property. The remaining one-fourth interest was found to be in the Duckworths. The plaintiffs have appealed from the decree, contending that they should be declared the owners of the entire beneficial interest in the property. The defendants have appealed on the grounds that the evidence does not support a finding of a resulting trust in favor of the plaintiffs for any interest in the property. We have jurisdiction of the appeal because title to real estate is directly involved. Davis v. Roberts, Mo.Sup., 295 S.W.2d 152, 154(1).

Plaintiff Dougherty, a 43-year-old plant superintendent, became acquainted with defendant John Duckworth at some unspecified time when Duckworth stopped at Dougherty's house to see about remodeling the house and chicken house into an apartment. The exact nature of Duckworth's business does not appear, but the inference from the testimony is that he was a builder or a contractor.

Subsequently Dougherty and Duckworth discussed the possibility of constructing a retirement center. After "several discussions at my kitchen table, over coffee," Dougherty and Duckworth decided that the latter should look for some property which might be developed for this purpose. Dougherty told Duckworth he could get enough money together to finance the project.

Duckworth located the 120-acre tract here in question. He and Dougherty went out to examine it. Dougherty told Duckworth to offer the owner, Pete Miller, $17,500 for the property and to give Miller a $50 check for earnest money "because that was all I had in the bank." The next day Duckworth told Dougherty that he had given a $200 check as earnest money because he wanted to acquire the property for his own use.[1] However, a week or two later Duckworth told Dougherty he could not handle the purchase him-

---

[1] Defendants do not contend that the fact plaintiffs actually became involved in the purchase subsequent to the contract of sale prevents any resulting trust in their favor. See IV Scott on Trusts 2d, Sec. 457, p. 3087; Hernandez v. Prieto, 349 Mo. 658, 162 S.W.2d 829. Generally, our cases make the time that the deed is taken the time as of which rights are to be determined. Lehr v. Moll, Mo.Sup., 247 S.W.2d 686; Pizzo v. Pizzo, 365 Mo. 1224, 295 S.W.2d 377.

self and that he needed $200 to cover the check he had given because he did not have that amount on deposit in the bank on which the check was drawn.

At sometime, whether after or before the locating of the property does not appear, Dougherty had interested plaintiff Smith and Clyde Elrod in the retirement center idea. Smith was apparently at that time a foreman in the same plant in which Dougherty was employed. At the time of the trial Smith was a funeral driver. Elrod's business does not appear. Smith told Dougherty that he had $1,000 to put up as earnest money to purchase the land. Eventually Dougherty called upon Smith for this amount, which Dougherty received and turned over to Duckworth.

Again the sequence of events is not entirely clear, but at some stage of the project the idea of a joint enterprise took shape in which Dougherty, Smith and Elrod would supply the purchase price of the land and Duckworth would supervise the construction of the necessary facilities thereon in return for which each participant would have a one-fourth interest in the enterprise. The arrangement was never reduced to writing.

The purchase of the land was completed and the transaction closed in July, 1961. The contract of sale was not introduced in evidence. Dougherty testified that the sale price was $17,000 or "might have been $17,500." Smith's $1,000, $3,200 contributed by Dougherty and $3,000 by Elrod were turned over to Duckworth and applied on the purchase price. In addition, a loan of $10,000 was made from the Webster Groves Trust Company secured by a deed of trust on the property. The proceeds of the loan were used to pay the balance of the purchase price. Title was taken in the name of the Duckworths and they also executed the note or notes for the $10,000 indebtedness and the deed of trust given to secure it. Plaintiffs testified that Duckworth put no money into the purchase.

The plaintiffs' explanation for placing the title in Duckworth's name was that, since he had signed the sale contract, the plaintiffs thought that more time might be required in order to change the transaction into the name of the four individuals, so they went through with the purchase and placed the property in Duckworth's name. Apparently neither of the plaintiffs nor Elrod consulted an attorney regarding the transaction and their testimony showed a considerable reluctance to seek legal advice.

Subsequent to the transfer of the property Smith, from August 10, 1961 to March 5, 1962, issued nine checks in the amount of $85 each, payable to Dougherty, who in turn endorsed them to Duckworth who in turn applied the proceeds in payment of monthly installments on the $10,000 indebtedness. When some problem arose about Duckworth's making the payments, Smith issued checks directly to the Webster Groves Trust Company. Nineteen such checks were issued from April 11, 1962 through November 15, 1963, each in the amount of $85.75. Apparently this was the correct amount of the monthly payments. There is some intimation that Duckworth made up the 75¢ deficiency in the $85 checks delivered to him. There is also some intimation that Duckworth paid one monthly payment, although Smith made a remittance to pay the obligation falling due in the same month. The evidence was that Duckworth's payment was from the proceeds of the sale of lumber which "we authorized to let Duckworth cut * * * to pay taxes."

Dougherty agreed with defendants' counsel's statement that the retirement center project "never got off the ground." Dougherty made one attempt to obtain financing for the project, but failed. He also had several discussions with an architect about plans for the development, but apparently the parties were never able to agree on either the size of the development or the plans therefor.

At some stage in the project (according to the petition in September, 1961), the proposal was advanced that the real estate be transferred to a corporation to be known as John Duckworth Enterprises, Inc., in which each of the four principals would own one-fourth of the capital stock. Apparently articles of incorporation for this purpose were prepared, but Duckworth declined to go along with the idea. There was some discussion about "buying out" Duckworth, but no agreement with him was reached. Smith did "buy out" Elrod, paying the latter $2,200 for his share of the enterprise.

In April, 1963, the Duckworths, without prior notice to the plaintiffs, transferred the property to Emma Wenzel. Wenzel had been employed as a secretary in a law office with which the Duckworths' attorney had formerly been associated. This action followed, the petition being filed April 16, 1963.

The Duckworths and Wenzel as appellants contend that the decree of the trial court establishing a resulting trust in favor of the plaintiffs for three-fourths interest is unsupported by the evidence. They contend that the testimony regarding the proposal that each of the four original parties to the transaction should become the owner of one-fourth interest in the real estate is unenforceable by reason of the statute of frauds. Section 456.010, RSMo 1959. They further contend that the evidence does not show that Dougherty, Smith and Elrod contributed a share of the purchase price sufficient to warrant the finding of a one-fourth interest in them. They contend that there is no evidence to show that the contributions of each of them equalled one-fourth of the purchase price and therefore no resulting trust of that share may be found. They also contend that the plaintiffs failed to show that they are entitled to a resulting trust in any part of the property because they fail to show what proportion of the purchase price the plaintiffs actually contributed. This contention is based on the theory that the plaintiffs' evidence failed to establish the purchase price for the prop-

erty and therefore no proportionate share may be computed.

Plaintiffs on the other hand contend that the evidence established a purchase money resulting trust, that the evidence showed that the plaintiffs either paid or obligated themselves to pay the full purchase price and that Duckworth, having breached the agreement by endeavoring to transfer the property without the consent of the plaintiffs, forfeited his right to any share in the real estate. Therefore, according to the plaintiffs, the trial court should have found them owners of the entire beneficial interest of the property.

" 'Where a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid, except as stated in §§ 441, 442, and 444.' " 2 Restatement, Trusts, 2d, Sec. 440, p. 393. Williams v. Ellis, Mo.Sup., 323 S.W.2d 238, 240(2).

"We have recently stated that ' "a resulting trust must arise, if at all, at the instant the deed is taken. Unless the transaction is such that the moment the title passes the trust results from the transaction itself, then no trust results. It cannot be created by subsequent occurrences." Bender v. Bender, 281 Mo. 473, 220 S.W. 929, 930 * * *. "A resulting trust, as distinguished from an express trust, is one implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and attend the transaction out of which it arises." Little v. Mettee, 338 Mo. 1223, 93 S.W.2d 1000, 1009(8); James v. James, Mo.Sup., 248 S.W.2d 623, 627(10). "As between strangers, a purchase-money resulting trust arises against the grantee of real property in favor of the payor of the purchase money unless it was the payor's intent that no such trust should arise; but the presumption of a resulting trust is rebuttable. * * * This presumption is based upon the sound principle that, absent evidence to the contrary, it is not the intent of any such payor to make a gift to the grantee." Fer-

guson v. Stokes, Mo.Sup., 269 S.W.2d 655, 659.' Davis v. Roberts, supra, 295 S.W.2d 152, 157. It is also well settled that the evidence required to establish a resulting trust must be clear, cogent and convincing. Dunlap v. Dunlap, Mo.Sup., 218 S.W.2d 108. If a resulting trust is established in a case where a person pays only a part of the purchase price the person so paying acquires a pro tanto interest in the real estate. Davis v. Roberts, supra." Isenman v. Schwartz, Mo.Sup., 335 S.W.2d 112, 116(2–7).

The plaintiffs' evidence, although essentially uncontroverted, is somewhat vague and indefinite. However, it does warrant the conclusion that Dougherty, Smith and Elrod contributed $7,200 to the purchase price of the property prior to its acquisition. There being no testimony on behalf of the defendants to rebut the presumption of the resulting trust arising from such payment, such trust would have arisen in the proportion which the amount so contributed bore to the purchase price.

■ We reject the defendants' contention that the evidence shows that the money was advanced to Duckworth by way of a loan. Dougherty testified that Duckworth had offered a note prior to taking the title and that he told Duckworth he did not want one. Duckworth said, "I can't understand * * * this is the first time that I've ever heard of anything like this * * *." In our opinion this testimony is insufficient to show that the advance of the $7,200 was intended as a loan to Duckworth. In fact, Dougherty's declining a note indicates that the payor did not intend the advance as a loan and his intention is the significant factor in a case such as this. 2 Restatement, Trusts, 2d, Sec. 441, p. 396.

The trial court found that, according to the agreement among the parties, the plaintiffs were to supply all the money "that is to purchase the real estate and furnish the materials for the construction of the Center." (We find no evidence regarding purchasing material for construction of the center, but, in any event, such finding is immaterial so far as the present action is concerned.) The court further found that the plaintiffs supplied the monthly payments on the mortgage. However, the testimony regarding any agreement or understanding relative to the payment on the mortgage was extremely vague. In his testimony Dougherty stated, with respect to the purchase price, that he was to advance one-fourth, Elrod one-fourth and "Smith was going to put in $1,000 plus making monthly payments." In another place Dougherty stated: "Bill (Smith) would be making the monthly payments, * * * I'd be making a portion of the monthly payments and John Duckworth would work out his ¼ interest."

■ We find in this testimony no evidence of an agreement among the plaintiffs and the Duckworths that the plaintiffs were to make the monthly payments and that the Duckworths were to be relieved of any liability on the indebtedness in their names. The plaintiffs point to no evidence in this regard. They merely state that the plaintiffs "obligated themselves" to pay the monthly installments on the indebtedness. They point to no specific testimony as evidencing such obligation and apparently rely on the fact that money for the payments was supplied by Smith. There is no evidence that Duckworth was in any manner a party to an agreement whereby the plaintiffs were to make the monthly payments. There is no showing of any dealings with the lender of the money and no evidence that the bank understood it was to look to the plaintiffs for the monthly payments. In fact, although there is some indication that the source of the money for such purpose was timber which he cut from the land, Duckworth, according to the plaintiffs, paid one installment on the indebtedness which would appear to be inconsistent with an unconditional obligation to pay by the plaintiffs. In addition, although the amount is minor, Duckworth apparently made up the difference between the amount Smith furnished and the amount due on the first nine payments. We conclude that the plain-

tiffs have failed to establish the facts necessary to show a resulting trust arising by reason of the payments on the indebtedness. Davis v. Roberts, Mo.Sup., 295 S.W.2d 152, 156–157(10, 11). "Where the transferee undertakes an obligation to the vendor to pay the purchase price, and another person at the time of the purchase does not agree with the transferee to pay the purchase price to the vendor, or to contribute to the payment, a resulting trust does not arise in favor of the other even though he subsequently pays the purchase price or assumes an obligation to pay it." 2 Restatement, Trusts, 2d, Sec. 456, Comment h, pp. 431–432.

Therefore, the only resulting trust established by the plaintiffs' evidence was that which arose by reason of their contribution to the cash payment applied toward the purchase of the property prior to the time of its acquisition. There is no evidence to support a finding that such contribution equalled or exceeded one-fourth of the purchase price. The oral arrangement that Dougherty, Smith and Elrod were each to have a one-fourth interest in the property is unenforceable by reason of the statute of frauds. Sec. 456.010, RSMo 1959, V.A.M.S. Woodard v. Cohron, 345 Mo. 967, 137 S.W.2d 497, 498; Mays v. Jackson, 346 Mo. 1224, 145 S.W.2d 392, 398(10). Therefore, plaintiffs are entitled to a resulting trust only in the proportion that their contribution bore to the total purchase price. 2 Restatement, Trusts, 2d, Sec. 454, Comment i, p. 421.

Plaintiffs contend that Duckworth's failure to go through with the plan of incorporation and to transfer the title to the corporation and his subsequent transfer of the property to Wenzel breached the agreement whereby he was to receive a one-fourth interest in the property in return for his services, and that, having breached the agreement, Duckworth is not entitled to any share of the property. This is not an action for breach of the alleged agreement or for its specific performance. Any such action would present obvious problems with respect to the statute of frauds. We are concerned here with what interest plaintiffs acquired by reason of their contribution to the purchase price of the property. That interest arose at the time of the transfer and cannot be enlarged by the subsequent violation by the alleged trustee of an unenforceable oral agreement with respect to the title to the land.

Plaintiffs also assert that Duckworth's failure to testify justifies the inference that the transfer to Wenzel was made with the intent to defraud plaintiffs. Again, assuming that the transfer was made with such intent, it might give rise to a constructive trust between plaintiffs and Wenzel, but only as to the interest in the land which plaintiffs had prior to the transfer. Consequently any unfavorable inference in such regard cannot benefit plaintiffs in this action.

We also reject defendants' contention that any trust which existed was for the development of the property for a retirement center and that when that project was abandoned by the parties, plaintiffs may not recover a resulting trust and their remedy is by reimbursement only. Defendants cite 89 C.J.S. Trusts § 123, p. 979, in support of this contention. If the rule there stated has any general application, it is not to a case such as this. The only case cited in Corpus Juris Secundum in support of the proposition urged (Hewson v. Charles P. Gillen & Co., N.J. Ch., 142 A. 250) involved facts far different from those here presented.

Ordinarily we would formulate the decree to be entered in this case. However, because the plaintiffs' evidence of the purchase price is indefinite, tending to support three different figures, $17,000, $17,200 and $17,500, we are unable properly to calculate the plaintiffs' interests. There must be better evidence available to establish the purchase price than that which the plaintiffs presented. We, therefore, will re-

mand the cause to permit additional evidence to be presented to establish the purchase price. Upon the proof thereof, Dougherty will be entitled to a resulting trust in the proportion which his $3,200 contribution bears to the purchase price. Smith will be entitled to a resulting trust in the proportion which the $4,000 he and Elrod combined contributed bears to the entire price. In this respect we reject the defendants' contention that, in view of Elrod's testimony that the $3,000 which he furnished was the product of a loan on property owned by him and his wife jointly, his wife must be held to share jointly in any interest which resulted to Elrod and that the attempted transfer by Elrod alone of his interest to Smith is ineffective. The payor claiming a resulting trust must show that the money used to pay the purchase price was his money, but only that it was his money as against the grantee. Here such was shown and we need not concern ourselves with what, if any, arrangement existed between Elrod and his wife regarding the loan. In holding that Smith is entitled to a share based upon payment by himself and Elrod, we also note that the defendants on the appeal have not urged the objection made at the trial to testimony regarding the transfer on the grounds that it represented an oral transfer of an interest in a trust in real estate.

 Smith may also elect on remand to assert a claim for reimbursement based upon the payments which he has made on the indebtedness and also for subrogation to the rights of the holder of the deed of trust with respect to the payments so made. We are not authorized on the record here to determine his rights in such regard. Davis v. Roberts, Mo.Sup., 295 S.W.2d 152, 158.

The interests of the plaintiffs will, of course, be subject to the lien of the deed of trust. However, as between plaintiffs and the Duckworths, the obligation is that of Duckworth.

No objection having been made to the portion of the judgment setting aside the deed from Duckworth to Wenzel, that portion of the judgment is affirmed. The remainder of the judgment is reversed and the cause remanded for further proceedings in accordance with this opinion and the entry of a new judgment thereafter as herein directed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.