Merle D. JONES, Plaintiff-Appellant,

v.

Icey ANDERSON, a/k/a Icey Anderson Jones, Defendant-Respondent.

No. 11887.

Missouri Court of Appeals, Southern District, Division No. 1.

June 9, 1981.

John M. Belisle, J. D. Baker, Belisle & Baker, Osceola, for plaintiff-appellant.

John A. Parks, Humansville, for defendant-respondent.

FLANIGAN, Judge.

From 1971 to 1979 plaintiff Merle D. Jones and defendant Icey Anderson, a/k/a Icey Anderson Jones, lived together on a forty-acre farm in Polk County, Missouri, but they were never husband and wife. When his relationship with defendant commenced, plaintiff was the husband of Sarah Daisy Jones and that marriage remained in effect until its dissolution by decree in April 1977. The farm was in the name of defendant alone, she having acquired title on December 7, 1971. Although the record is unclear, it is a reasonable inference that the parties started living together on the farm at about the time defendant acquired title.

The petition was in three counts. In Count I, entitled "Action to Establish a Resulting Trust," plaintiff sought a declaration that defendant held an undivided ½ interest in the farm as trustee for plaintiff, and an order vesting title, with respect to that ½ interest, in plaintiff. In Count II plaintiff sought partition by sale with an equal division of the proceeds between the parties. Count III, entitled "Action for Restitution," was pleaded in the alternative. In that count plaintiff alleged that he had made certain improvements on the land with the knowledge and consent of defendant and sought judgment for $11,250 "as and for the increase in the value of the land due to the improvements made by plaintiff."

The trial court found the issues in favor of plaintiff on Count I and Count II. The finding on Count III was in favor of defendant. Defendant was denied relief on her counterclaim for breach of promise.

Although plaintiff prevailed on Count I and Count II, the trial court found that plaintiff was entitled only to an undivided one-twenty-third (1/23) interest in the farm rather than the one-half interest which plaintiff had sought. The decree recited that defendant held the undivided 1/23 interest as trustee for plaintiff and ordered that title to the undivided 1/23 interest be vested in plaintiff, that partition by sale be granted, and that the 1/23 interest in the proceeds be distributed to plaintiff and 22/23 be distributed to defendant. Plaintiff appeals.

Plaintiff's first point is that the trial court erred, with respect to Count I, in finding that plaintiff was entitled only to a 1/23 interest in the land, under a resulting trust, for the reason that plaintiff was entitled to a ½ interest in that, under the greater weight of the evidence, the agreement of the parties was that plaintiff was to own a ½ interest and plaintiff "provided the agreed consideration" for the ½ interest.

"A resulting trust arises by operation of law from the facts of a case. It is one implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and attend the transaction out of which it arises." *Meyer v. Meyer*, 285 S.W.2d 694, 698 (Mo.1956). "While express trusts of land must be 'manifested and proved by some writing' pursuant to [§ 456.010][1] ... trusts which result or arise by implication of law are not affected by the statute and may be established by parol evidence." *Parker v. Blakeley*, 338 Mo. 1189, 93 S.W.2d 981, 987 (Mo. 1936). Section 456.030 "has the effect of excluding resulting trusts, among others,

---

1. All references to statutes are to RSMo 1978, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

from the operation of § 456.010 which requires all declarations or creations of trusts in land to be evidenced by some writing signed by the party who has the capacity to create the trust." *Long v. Kyte*, 340 S.W.2d 623, 627 (Mo.1960). To establish a resulting trust "an extraordinary degree of proof is required ... vague or shadowy evidence or a preponderance of the evidence is not sufficient. The evidence must be so unquestionable in its character, so clear, cogent and convincing that no reasonable doubt can be entertained as to its truth and the existence of the trust." *Pizzo v. Pizzo*, 365 Mo. 1224, 295 S.W.2d 377, 385[10] (Mo. banc 1956).

As between strangers, a purchase-money resulting trust arises against the grantee of real property in favor of the payor of the purchase money unless it was the payor's intent that no such trust should arise. The presumption of a resulting trust is rebuttable. The presumption is based upon the sound principle that, absent evidence to the contrary, it is not the intent of the payor to make a gift to the grantee. *Dougherty v. Duckworth*, 388 S.W.2d 870, 875 (Mo.1965). If a resulting trust is established in a case where a person pays only a part of the purchase price, the person so paying acquires a pro tanto interest in the real estate. *Isenman v. Schwartz*, 335 S.W.2d 112, 116 (Mo.1960). "If the alleged trust claimed by the intended cestui is not of the whole of the property, the proportionate interest must be clearly and definitely shown [*Ellis v. Williams*, 312 S.W.2d 97, 101[7] (Mo.1958)], and should the amount of money contributed by the claimant be uncertain, no trust can result in his favor." *Fulton v. Fulton*, 528 S.W.2d 146, 154 (Mo.App.1975). Where the facts create a resulting trust, the interest of each purchaser is determined by the proportion which his contribution bears to the total purchase price and an oral arrangement for the purchasers to have a fractional interest differing from such proportion is unenforceable by reason of the statute of frauds. *Dougherty v. Duckworth*, supra, at 876[5, 6].

"If the transaction is an express oral agreement providing for a conveyance of land, it becomes at once an express trust, and not a resulting trust; it cannot be established by parol evidence due to the prohibition of the Statute of Frauds. *Bender v. Bender*, 281 Mo. 473, 220 S.W. 929, 930[5] (1920). However, existence of an express oral agreement on the part of a grantee to hold land for the payor of the consideration does not destroy the resulting trust or cause the transaction to be judged as an attempt to create an express trust." *Hergenreter v. Sommers*, 535 S.W.2d 513, 518 (Mo.App.1976).

"A resulting trust is created by operation of law from the facts of the transaction and not from an agreement, from what the parties do and never from what they agree to do." *Wenzelburger v. Wenzelburger*, 296 S.W.2d 163, 166[5] (Mo.App.1956). "[A] resulting trust must arise, if at all, at the instant the deed is taken. Unless the transaction is such that the moment the title passes the trust results from the transaction itself, then no trust results. It cannot be created by subsequent occurrences." *Pizzo v. Pizzo*, supra, 295 S.W.2d at 385[9].

"[T]he [resulting] trust must arise from the facts existing at the time title to the land was acquired; and cannot be created subsequently by the expenditure of the claimant's money in improving the property, or by oral declarations of the grantee...." *Clubine v. Frazer*, 346 Mo. 1, 139 S.W.2d 529, 532 (Mo.1940).[2] To similar

---

2. "A resulting trust does not arise in favor of a person who pays no part of the purchase price, although he pays for improvements upon the property. At most he is entitled to reimbursement for the amount expended in making the improvements, and under some circumstances he may be entitled to an equitable lien upon the land to secure his right to reimbursement; but he is not entitled to a beneficial interest in the land." Scott on Trusts § 454.7, p. 2294.

Section 454, p. 416 Restatement of Trusts 2d, reads:

"Where a transfer of property is made to one person and a part of the purchase price is paid by another, a resulting trust arises in favor of the person by whom such payment is made in such proportion as the part paid by him bears

effect see *Jacobs v. Jacobs*, 272 S.W.2d 185, 189 (Mo.1954); *Wenzelburger v. Wenzelburger*, supra, at 166; 89 C.J.S. Trusts § 111, p. 961. "The test of the right to establish a resulting trust is the true ownership of the consideration upon which the title rests." *Davis v. Roberts*, 365 Mo. 1195, 295 S.W.2d 152, 157 (Mo. banc 1956).

Appellate review of this non-jury action is governed by Rule 73.01 as construed in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Neither side requested that the trial court make specific findings and that tribunal made none. That being the situation, the rule requires that all fact issues "shall be considered as having been found in accordance with the result reached."

■ It is clear that the trial court, in awarding plaintiff an undivided ½₃ interest in the farm, found that plaintiff had contributed $500 to the purchase price of $11,500. That implied finding is supported by the evidence.

The farm was purchased from Ivan L. Pettit and his wife in 1971. It was plaintiff's testimony that he "arranged the purchase and handled all the papers." The sole grantee, in the deed from the Pettits, was defendant. Although plaintiff testified that the purchase price was $12,500, it was defendant's testimony that the actual figure was $11,500. The parties agreed that plaintiff made a $500 contribution, as a down payment. The $11,000 balance was financed by two installment notes, made respectively to two different lenders, in which defendant was the sole maker, each secured by deed of trust executed by defendant alone. Over the years defendant, from her personal funds, made all of the payments on the notes. Defendant was the recipient of a government pension, exceeding $700 a month, and it was the source of the note payments.

Although plaintiff gave vague testimony that the purchase price was $12,500, and that in addition to the $500 payment, he made other payments—"I forget how much, it's in the $1,300–$1,400 bracket"—the trial court did not believe that testimony and the record contains no basis for this court to interfere with that finding.

It was plaintiff's testimony that when the farm was purchased, "It was in the worst condition you ever saw." He testified that he built fences, hung gates, "cleared about 20 acres," laid rugs, hung doors, built cabinets, built a new shed, and put a new roof on the barn. Plaintiff said that the farm was "placed in Icey's name alone because Daisy and I was in a lawsuit at the time." He said, "It was my desire that the title not be placed in joint ownership with me and Icey." From 1971 through 1976 plaintiff was employed in Springfield. In 1977 plaintiff had no outside employment "but I still lived with Icey and I still received the benefit of the home."

From time to time plaintiff raised cattle on the farm and sold them in the fall. Defendant testified that she purchased the groceries and paid the utility bills. Defendant did the laundry. Plaintiff conceded that defendant was an excellent housekeeper. Defendant testified that in her opinion "the value of my services to Merle was worth $150 a month."

Plaintiff, testifying in his own behalf, stated that he had "discussions" with the defendant at the time the farm was purchased. Plaintiff said, "I will tell you exactly what the agreement was between us, I was to buy the farm, she would make the payments on it. Now that was the deal we

to the total purchase price, unless he manifests an intention that no resulting trust should arise or that a resulting trust to that extent should not arise."

Under that section, at p. 424, Comment *o* reads:

"*o.* Advances for improvements or to discharge encumbrances. The rule stated in this Section is not applicable where the transferee pays the whole amount of the purchase price and another person makes advances for the making of improvements upon the property or discharging encumbrances thereon. In such a case the person who makes the advances is not entitled to enforce a resulting trust in his favor as to a share of the property since he has not paid any part of the purchase price, but is entitled at most to an equitable lien upon the property for the amount of his advances."

made." With regard to what he meant by he was to buy the farm, plaintiff stated, "I was to find it." "She would take care of the house, I would take care of the rest of it. By that I mean maintain the farm."

Later in his direct examination plaintiff gave the following testimony:

"Q. What was your intent about her holding the property at the time that the property was purchased?

"A. Just exactly what I told you. I didn't have a divorce from this gal and she would come back and take it away from us. That's the reason we put it that way to protect us.

"Q. But she was to hold one-half of the property for you?

"A. Yeah."

On cross-examination of defendant by plaintiff's counsel, the following testimony was elicited:

"Q. What was the discussion between you and he as to joint ownership of this property?

"A. Well, I thought we would be married. It would be ours like anybody would."

"Q. You thought the marriage would automatically—

"A. Get married, yes.

"Q. That would transfer the title?

"A. Well, at the time I never thought anything about the title deal."

.    .    .    .    .

"Q. Mrs. Anderson, isn't it true awhile ago, you stated that you were to buy this property together?

"A. That's right.

"Q. You were both to own it?

"A. That's right.

"Q. You were going to own it half and half?

"A. There was no contract signed that I pay half and he pay half, but we was going to buy it as joint—as husband and wife.

"Q. And you was going to own it together?

"A. That's the intention.

"Q. That was the intention from the start, was you were going to own it together?

"A. That's right. That's right."

Plaintiff contends that the trial court should have found a resulting trust, to the extent of an undivided ½ interest, in favor of plaintiff because "the agreements of the parties prior to and contemporaneously with the transaction that the parties own a certain interest in the premises upon the completion of certain acts after the passage of title can form the basis for the imposition of resulting trust." It is plaintiff's position that the testimony of plaintiff and defendant with regard to the "agreement" leading up to the purchase of the farm, coupled with the acts of the plaintiff, subsequent to the purchase, in making the improvements give rise to the resulting trust.

Authorities cited earlier hold that a resulting trust arises from the facts of the transaction and not from an agreement, "from what the parties do and never from what they agree to do." They also hold that a resulting trust must arise, if at all, at the instant the deed is taken and that it cannot be created by subsequent occurrences, including the making of improvements. Plaintiff's contention may be inconsistent with those principles. If a mere agreement, standing alone, is insufficient to create a resulting trust and if the making of improvements by plaintiff subsequent to the acquisition of the title by the grantee-defendant is also insufficient, it seems anomalous that a combination of those insufficient elements would achieve a result which neither alone could produce.

Count I of the petition was based on the theory of resulting trust. Plaintiff's position on appeal seems to be closer to a theory of entitlement to specific performance of an oral contract to create an express trust coupled with the proposition that the outlays and labor of plaintiff constitute such part performance as to remove the oral contract from the statute of frauds.

■ As between spouses, the general view is that part performance under an oral

contract to convey may not be predicated upon possession or improvement by one spouse of real property of the other. See the cases collected in 74 A.L.R. 218, including *Rogers v. Wolfe,* 104 Mo. 1, 14 S.W. 805 (1890). If a husband would not be entitled to specific performance under comparable circumstances, is it reasonable that a self-confessed adulterer should have greater rights in the land of his mistress? In this situation of indecency, the exertions and expenditures of the plaintiff seem no more than the decent things to do.

The statute of frauds is an affirmative defense, Rule 55.08. The answer of defendant did not plead that defense, and understandably so because Count I of the petition was based on the theory of resulting trust which, by reason of § 456.030, is excluded from the operation of the statute of frauds. Nevertheless, when the evidence of the plaintiff seemed to pursue the theory of enforcement of an oral contract to create an express trust, defendant's counsel interposed objections based on the statute of frauds.

"When the statute is applicable an oral contract for the conveyance of real property cannot be enforced. The party against whom the contract is sought to be enforced may admit the oral contract and still interpose the defense of the Statute of Frauds, *Jones v. Linder,* 247 S.W.2d 817, 820 (Mo. 1952)." *Shaffer v. Hines,* 573 S.W.2d 420, 422[3, 4] (Mo.App.1978). Even if plaintiff is accorded the benefit of Rule 55.33(b), dealing generally with the amendment of pleadings to conform to the evidence, the record does not establish plaintiff's entitlement to the enforcement of an oral promise to create an express trust.

▮ In some situations, Missouri courts have granted specific performance of oral contracts to convey realty where the promisee has expended labor and funds in improving the land. See, for example, *Thierry v. Thierry,* 298 Mo. 25, 249 S.W. 946 (1923). See 101 A.L.R. 923, 1059 (Oral Land Contract—Part Performance). The instant record, however, will not support the grant of such relief.

It has been said that "the exact limits of the part performance doctrine as applied to oral trusts of land are not clear." Bogert, Trusts and Trustees, Sec.Ed.Rev. § 496, p. 464. The same author, in § 92, p. 507, states: "It would appear reasonable that the equitable principles as to part performance applied in the construction of the section [of the statute of frauds] having to do with contracts to convey an interest in land should also govern in cases involving an oral trust of land. Both sections are concerned with the creation of legal or equitable interests in land. And it is believed that the better reasoned cases regarding oral trusts of land do apply the doctrine of part performance mentioned above, namely, that the courts will not allow the trustee to block enforcement on the ground of the statute, where the beneficiary has acted under the trust in such a way as to make the use of the statute against him inequitable."

In *Poole v. Campbell,* 289 S.W.2d 25 (Mo. 1956), an action for specific performance with an oral agreement to convey land, the court set out the rules for determining whether evidence of performance of the oral contract is sufficient to satisfy the equitable standards for relief and remove the transaction from the operation of the statute of frauds. At p. 30 the court said:

"The rules cover many phases; i. e., (1) the alleged oral contract must be clear, explicit, and definite; (2) it must be proven as pleaded; (3) such contract cannot be established by conversations either too ancient on the one hand, or too loose or casual upon the other; (4) the alleged oral contract must itself be fair, and not unconscionable; (5) the proof of the contract as pleaded must be such as to leave no reasonable doubt in the mind of the chancellor that the contract as alleged was in fact made, and that the full performance, so far as lies in the hands of the parties to perform, has been had; (6) and the work constituting performance must be such as is referable solely to the contract sought to be enforced and not such as might be reasonably referable to some other and different

contract; (7) the contract must be one based upon an adequate and legal consideration, so that its performance upon the one hand, but not upon the other, would bespeak an unconscionable advantage and wrong, demanding in good conscience relief in equity; (8) proof of mere disposition to devise by will or convey by deed by way of gift, or as a reward for services, is not sufficient, but there must be shown a real contract to devise by will or convey by deed made before the acts of performance relied upon were had."

In *Poole*, at p. 31, the court also said: "It is only where the very justice of the thing is so clear that the refusal of relief would itself amount to a deep-seated wrong and fraud upon the party that courts of equity will act...."

The instant record falls short of meeting the requirements of the rules set forth in *Poole*. Plaintiff's version of the alleged agreement lacks clarity and definiteness but in any event the trial court was not required to accept his version. The testimony of defendant, elicited on cross-examination by plaintiff's counsel, makes no mention of an agreement to hold the title with an undivided ½ interest for the benefit of the plaintiff in exchange for his making improvements and expenditures. The trial court would have been justified in believing that plaintiff's services were not such as to be referable solely to the contract sought to be enforced.

Here plaintiff knew that title had been taken in the name of defendant alone,[3] and indeed he had arranged it. The plaintiff's evidence concerning the value of his efforts and the amount of his expenditures was vague. In view of defendant's testimony concerning the value of the services she rendered plaintiff, a value which ignored the admitted fact that the parties engaged in illicit sexual relations, it appears that plaintiff was not the victim of a wrong.

There is no showing of fraud, actual or constructive, on the part of defendant, nor does it appear that she has been unjustly enriched. The appeal of plaintiff makes no complaint concerning the ruling with respect to Count III.[4] The trial court's disposition of that count is not involved.

Plaintiff's first point has no merit.

■ Plaintiff's second point is that the trial court erred in excluding certain evidence offered by plaintiff. This point has not been preserved for appellate review for the reason that the statement of facts portion of appellant's brief does not set forth the facts relevant to the question presented, thus violating Rule 84.04(c). Moreover, plaintiff made no offer of proof.

■ Defendant, in her brief as respondent, seeks to attack that portion of the judgment which awarded plaintiff an undivided ⅟₂₃ interest in the farm and in the proceeds of the partition sale. This purported attack is based on the theory that "plaintiff's conduct violated the equitable principle of clean hands—when plaintiff caused ownership of property in which he claimed an interest to be placed in the name of defendant alone for the single purpose of preventing the attachment of his wife's marital interest, he was acting with a fraudulent purpose."

■ This contention by defendant, who filed a notice of appeal but later abandoned her appeal, will not be considered. When only one party appeals from a judgment, review is limited to the contentions made by him, and allegations of error raised by respondent will not be considered. *First Bank of Commerce v. Labor & Indus., Etc.*, 612 S.W.2d 39, 46[17] (Mo.App.1981); *Pisha v. Sears Roebuck & Company*, 496 S.W.2d 280, 285[12] (Mo.App.1973). This rule applies to equity cases as well as law actions. *Wagner v. Wagner*, 465 S.W.2d 655, 657[1, 2] (Mo.App.1971). See also *Senter v. Ferguson*, 486 S.W.2d 644, 648[6, 7] (Mo.App.

---

3. For the effect of such knowledge upon any claim by plaintiff to an equitable lien, no such claim being asserted here, see *Welborn v. Rigdon*, 231 S.W.2d 127, 134[12] (Mo.1950).

4. See 66 Am.Jur.2d Restitution and Implied Contracts § 54, p. 1000. Cf. *Wells v. Goff*, 361 Mo. 1188, 239 S.W.2d 301 (1951).

1972). Even if defendant had preserved her contention by perfecting her appeal, this court has recently held that her contention is unsound. *Fenton v. Walter*, 612 S.W.2d 17, 20[5] (Mo.App.1981).

The judgment is affirmed.

GREENE, P. J., and TITUS, J., concur.