John M. COLLINS, Respondent,

v.

Marvin Donald LINK, Appellant.

No. 38310.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Jan. 3, 1978.

Motion for Rehearing and/or Transfer Denied Feb. 14, 1978.

Theodore F. Schwartz, Clayton, for appellant.

Joseph R. Soraghan, Coburn, Croft, Shepherd, Herzog & Putzell, St. Louis, for respondent.

ALDEN A. STOCKARD, Special Judge.

By his petition plaintiff sought to impose a resulting trust on certain real estate which was titled in the name of defendant alone, and on certain personal property, both of which were acquired by the use of jointly owned funds. Plaintiff prayed that the court decree that the personal and real property be held by plaintiff and defendant as "joint tenants," subject to the interest of Clayton Federal Savings and Loan Association in the real estate, that the plaintiff's interest be declared to be 64% of the total, and that the property be sold, after the interest of the Savings and Loan Association be paid, and the proceeds be divided between plaintiff and defendant according

to their respective interests. The trial court held that plaintiff is entitled to a resulting trust in the real estate to the extent of one-half interest, that plaintiff is entitled to one-half interest in the described personal property which has a value of $22,325, and that plaintiff have judgment against defendant in the amount of $11,162.50, which may be satisfied by payment in cash or by the delivery to plaintiff of items of the described personal property of that value. Defendant has appealed. We affirm.

Plaintiff, John M. Collins, and defendant, Marvin Donald Link, both unmarried, lived together from September 1, 1963 until September 13, 1974. At first they shared an apartment, each paying one-half of the rent and other expenses. About the first of 1965 they established a joint checking account from which all household expenses were paid. Plaintiff contributed his entire paycheck to that account, while defendant gave cash to plaintiff to be deposited in the joint account. He at first gave $100 a week, later $110 and finally $120, but defendant occasionally, but not regularly, contributed the entire amount of his check. Plaintiff usually would deposit all the money he received from defendant in the joint account, but at times he would use some of the money to pay the expenses of the household with cash and then deposit the remainder. All of plaintiff's personal expenses, and some of defendant's, were paid from the cash so received or from the joint account, but the evidence does not show the precise amount of personal expenses of either party.

In February, 1965 plaintiff and defendant moved to a single-family residence at 7342 Drexel Drive which was purchased in defendant's name alone. The purchase price was paid by defendant, in part with money he received from his parents, and he executed a promissory note, secured by a deed of trust, for the balance. Plaintiff made no contribution to the down payment, and he did not sign the note representing the balance due. All installment payments on the note and the cost of at least some of the furnishings were paid from the joint account. Plaintiff testified that he considered himself "bound" to defendant to pay part of the installment payments on the note. The reason, according to plaintiff, that the title was taken in defendant's name alone was that plaintiff had recently been divorced and they "weren't quite sure as to the legal involvements in the event that [his] former wife decided to take additional legal action against [him], and it seemed at the time advisable to put the property in [defendant's] name to avoid problems of any kind."

In the spring of 1971, plaintiff and defendant enlisted the services of a real estate agent to find another residence. At least eight offers to buy residences were made, and in each case the earnest money check was drawn on the joint account. In their conversation with the agent, plaintiff and defendant repeatedly referred to the fact that "we are buying a house." Their efforts resulted in the purchase of a residence at 6 Hortense Place in the City of St. Louis for $35,250. As the result of a discussion between plaintiff, defendant and the real estate agent, it was decided that the sales contract should be submitted in the name of defendant alone. This decision was reached because (a) it was believed, perhaps mistakenly, that the subdivision restrictions which limited the use of the property to a single-family residence would preclude ownership in the names of two unmarried men, (b) the owner had expressed the desire that the house be purchased by people with a large family and the owner might not be receptive to selling the property to two unmarried men, and (c) since the Drexel Street property was in defendant's name alone, it was believed, again perhaps mistakenly, that it would be easier to obtain financing for the Hortense Place property. As a part of this discussion, mention was made that an attorney could later be consulted to change the record ownership to plaintiff and defendant.

An earnest money deposit for the Hortense Place property in the amount of $1,000 was paid by cashier's check purchased by a check drawn on the joint account.

The Drexel property was sold, and $6,100.66, the amount received after the payment of the balance due on a secured note and the payment of expenses, was deposited in the joint account, which prior to this deposit had a balance of $7,756.53. A check in the amount of $12,377.99 was then drawn against the joint account for the purchase of a cashier's check to pay the balance of the down payment on the Hortense Place property. Defendant alone executed documents assuming the obligations of the seller under an existing note and deed of trust. Subsequent installment payments of principal and interest on the note were paid from the joint account. Defendant claimed the interest and tax payments as deductions on his income tax returns, but he deposited the total of his tax refunds in the joint account. Some of the furnishings of the Hortense Place residence were purchased with money from the joint account, and all money paid for the Hortense Place property, including the earnest money deposit, the down payment, and the monthly installments, came from the joint account.

In its findings of fact the trial court found that plaintiff's evidence established an "intention shared by the parties" that "the title to the Hortense [Place] property be taken in the name of defendant alone for the benefit of both." It also found that "plaintiff's theory under which he claim[ed] a 57.18% interest" was not established by the evidence. The court then reviewed certain facts, namely, that the parties maintained a joint account to which each contributed and had free and unlimited access and, "absent * * * any contrary intention, ownership of a one-half interest," that the net proceeds from the sale of the Drexel property were placed in that account, that the earnest money and down payment for the Hortense Place property were paid from that account, and that these acts were "performed in the shadow of the history of nine years of sharing the monthly installment payments on Drexel and the expectation of continuing the same course with regard to the installment payments on Hortense." The court then concluded that "at the time the title to [the] Hortense [Place

property] was acquired, it was the intention of the parties that each was to have an equal one-half ownership interest therein, that the title was taken in the name of defendant alone for convenience of financing and because of their mutual misunderstanding of subdivision restrictions, and that as a consequence thereof the defendant holds an undivided one-half interest in the real estate in trust for the benefit of plaintiff." As to the personal property, the court found that a list, introduced in evidence and not contradicted by defendant, of the items of property with a value stated for each item, "were purchased jointly by the parties with funds from the joint account over the years that they lived together," and that plaintiff is entitled "to a one-half interest therein."

We review this case upon both the law and evidence giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. Rule 73.01(3). This has been construed to mean that the decree of the trial court "will be sustained * * * unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Appellant asserts in his points that the court erred in decreeing a resulting trust because (a) "a resulting trust never arises by agreement but only by operation of law," and (b) "plaintiff did not furnish the consideration for the purchase." He also asserts the court erred in decreeing that the trust was created "in an amount equal to fifty percent of the real estate and personal property for the reason that said proportional interest was not pleaded."

In making the contention that a resulting trust does not arise by agreement, appellant relies on the finding of fact by the trial court that the evidence established "an intention shared by the parties that the title to the Hortense [Place] property be taken in the name of defendant alone but for the benefit of both." He then argues that "a resulting trust is created only by operation of law and never from what the parties

agree to do," and further that the "law is unequivocally clear that a resulting trust does not arise by agreement, either expressed or implied."

The substance of this argument is that by agreement the parties created an express trust, and assuming for the purposes of this discussion that this is so, a court of equity is not bound by an erroneous classification or label, if that is what occurred. This would mean that defendant held title to the property in question in trust pursuant to an agreement, and the result of this case, absent some other controlling factor, would be the same.

■ We are of the opinion, however, that appellant has misconstrued the basic elements of a resulting trust. "A resulting trust, as distinguished from an express trust, is one implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and attend the transaction out of which it arises." *Little v. Mettee*, 338 Mo. 1223, 93 S.W.2d 1000, 1009 (1936). Usually the claimed beneficiary must have furnished the consideration, or a fixed proportionate part, and there must be a presumed intent on the part of the legal owner to hold for such beneficiary. *Jacobs v. Jacobs*, 272 S.W.2d 185, 188 (Mo.1954). From the evidence the trial court found that this intention existed. The fact that there was an agreement between the parties that certain acts be done or not done does not, of itself, preclude a resulting trust. That agreement constitutes a circumstance or fact, with others, from which a resulting trust may arise by operation of law. The statement to the effect that a resulting trust "never arises by virtue of an agreement" which appears in cases such as *Woodard v. Cohron*, 345 Mo. 967, 137 S.W.2d 497, 498 (Mo.1940); *Mays v. Jackson*, 346 Mo. 1224, 145 S.W.2d 392, 399 (1940); *Fulton v. Fulton*, 528 S.W.2d 146, 158 (Mo.App.1975), pertains to an agreement to create a trust; not to an agreement that certain acts be done which in turn give rise to the creation of a trust by operation of law. We agree with the general statement by appellant in his first point that "a resulting trust never arises by agreement but only by operation of law," but the statement is not applicable when applied to the facts of this case.

■ It is not clear what is meant by appellant's point that "plaintiff did not furnish the consideration for the purchase" of the Hortense Place property. If he means that plaintiff did not furnish all the consideration for the purchase he is correct, but if he means that it was necessary that he do so before a trust would result, he is in error. It is the accepted rule, as stated in Restatement of Trusts, 2d ed., § 454, that "Where a transfer of property is made to one person and a part of the purchase price is paid by another, a resulting trust arises in favor of the person by whom such payment is made in such proportion as the part paid by him bears to the total purchase price, unless he manifests an intention that no resulting trust should arise or that a resulting trust to that extent should not arise." See also 76 Am.Jur.2d Trusts § 219; and 89 C.J.S. Trusts § 122. All payments toward the purchase of the Hortense Place property were made from a joint account to which plaintiff had contributed a substantial portion if not a majority of the funds. The trial court expressly found that the conduct of the parties evidenced an intention that title to the real property should be taken in the name of defendant for the benefit of both, and that the parties also intended that each have an equal interest in the joint account. "Where the consideration proceeds from two or more persons jointly, and a conveyance of the legal estate is taken in the name of one alone of them only, or of a third person for their benefit, a resulting trust, as a general rule, will arise in favor of the parties not named in the conveyance, in proportion to the amount of the consideration they have respectively contributed. In the absence of proof to the contrary, in such cases, the law presumes that the different parties contributed equally." 89 C.J.S. Trusts § 122, p. 977. We find no merit to appellant's contention that "plaintiff did not furnish the consideration" for the purchase of the Hortense Place property.

**136**

There also is no merit to appellant's contention that it was error for the court to decree the existence of the trust in an amount equal to 50% of the real and personal property because "said proportional interest was not pleaded." Plaintiff pleaded that he had an interest in the amount of 64% of the property, and at trial he attempted to prove an interest of 57.18%. The evidence upon which the court based its findings came in without any objection that it was outside the pleadings. In that event the pleadings are deemed to be amended to conform to the proof. Rule 55.33(b); *Heald v. Erganian,* 377 S.W.2d 431 (Mo.1964); *Anderson v. Dyer,* 456 S.W.2d 808 (Mo.App. 1970).

Appellant asserts that the "evidence was insufficient as a matter of law" to show a trust "by operation of law," and that plaintiff did not "prove what proportion [his] contribution bore to the total purchase price." As to his first contention, he does not state in what respect the evidence was insufficient. In support of his latter contention he cites cases, such as *Dougherty v. Duckworth,* 388 S.W.2d 870 (Mo.1965); and *Shelby v. Shelby,* 357 Mo. 557, 209 S.W.2d 896 (1948). These cases, and others cited, have been carefully reviewed but they are not helpful to appellant in view of the express findings of the trial court, which are supported by substantial evidence, that all payments toward the purchase of the property were made from the joint account, and that it was the intention of the parties that each have an equal interest in that account.

The judgment is affirmed.

SIMEONE, C. J., and NORWIN D. HOUSER, Special Judge, concur.