Kenneth DUNCAN and Grace Duncan, his wife, Plaintiffs-Respondents,

v.

George RAYFIELD, et al., Including Separate Defendants, Charles Duncan and Mary Duncan, his wife, Defendants-Respondents,

and

Separate Defendant, Lorene Duncan, Defendant-Appellant,

Duncan Brothers, Inc., Intervenor-Defendant-Respondent,

Erma Jean Good, et al., Intervenors-Defendants-Respondents.

No. 13852.

Missouri Court of Appeals, Southern District, Division Three.

August 28, 1985.

Motion for Rehearing or Transfer Denied Sept. 23, 1985.

Application to Transfer Denied Nov. 21, 1985.

J.B. Schnapp, Schnapp, Graham & Reid, Fredericktown, for defendant-appellant.

L. Dwayne Hackworth, Hackworth and Schuller, Piedmont, for plaintiffs-respondents.

FLANIGAN, Judge.

The issue is whether the trial court erred in holding that a resulting trust arose in favor of respondent Duncan Brothers, Inc., a Missouri corporation, ("the corporation"), with respect to a tract of land, of approximately 453 acres, in Wayne County. Appellant is Lorene Duncan, ("Lorene"), now Lorene Duncan Lovelace, who on October 1, 1970, obtained record title, as a tenant in common, to an undivided ¼ interest in approximately 460 acres of land in Wayne County. This tract, referred to in the record as the "Rayfield property," will be referred to as "Tract A" in this opinion. On February 28, 1974, Lorene and her then husband, Wayne Duncan, and her fellow tenants in common,

together with their respective spouses, conveyed a seven-acre portion of Tract A to Kenneth Duncan and Grace Duncan. This opinion will refer to the seven-acre tract as Tract B.

On June 18, 1981, plaintiffs Kenneth Duncan and Grace Duncan filed this quiet title action seeking an adjudication that the plaintiffs are the legal owners of Tract B. The grantors in the October 1, 1970 deed, which conveyed Tract A, were George Rayfield and his wife Freda Rayfield. The four grantees in that deed were Rebecca S. Lorch, Mary Duncan, plaintiff Grace Duncan and appellant Lorene. The original defendants were George Rayfield, Freda Rayfield, Rebecca Lorch, her husband L. Michael Lorch, Mary Duncan, her husband Charles L. Duncan, and appellant Lorene, then a widow.

Plaintiffs, after obtaining record title to Tract B by the deed of February 28, 1974, built a home there and held undisturbed possession. At the trial no one challenged plaintiffs' ownership of Tract B and it is not questioned on this appeal.

On deposition Charles Duncan testified that the undivided ¼ interest in Tract A to which Rebecca Sue Lorch obtained record title under the October 1, 1970 deed, had, through mesne conveyances, been conveyed to him. Lorene, by counterclaim against the plaintiffs and crossclaim against Charles and Mary Duncan, sought partition, by sale, of Tract A (minus Tract B) on the theory that Lorene was the owner, as a tenant in common, of an undivided ¼ interest and that Mary Duncan, Charles Duncan and Grace Duncan each owned an undivided ¼ interest, subject to the rights of their respective spouses.

The corporation intervened and filed a two-count "Crossclaim and Counterclaim."[1]

The crossclaim was directed against Mary Duncan and Lorene, and the counterclaim was against plaintiff Grace Duncan. Count I, based on adverse possession, sought to quiet the title to Tract A and a declaration that the corporation was the owner of it in fee simple. The trial court found against the corporation on Count I and there was no appeal from that ruling. Count II, based on the theory of resulting trust, sought a decree divesting Mary Duncan, Grace Duncan and Lorene of their respective undivided ¼ interests in Tract A and declaring that the corporation was the legal owner of those interests.[2]

The trial court, sitting without a jury, upheld the corporation's theory of resulting trust, awarded Tract B to Kenneth and Grace Duncan, awarded Tract A (minus Tract B) to the corporation, and declared that Lorene had no interest in Tract A or Tract B. On this appeal, not questioning the trial court's award of Tract B, Lorene asserts that the trial court erred in finding that the corporation became the owner of Tract A in 1970 by reason of resulting trust. For the reasons which follow, this court finds there was no resulting trust and that Lorene's appeal is meritorious.

Wayne Duncan, Lorene's husband, died in 1978. The corporation was incorporated in December of 1955, and from that time until Wayne's death there were 600 shares outstanding—200 held by Wayne, 200 held by Charles Duncan, and 200 held by Kenneth Duncan. The three men were brothers and, until Wayne's death, they were the only officers, directors, and stockholders.

Respondents in this court are Kenneth Duncan and Grace Duncan, (plaintiffs below), the corporation, (intervenor below), and Charles Duncan and Mary Duncan, (defendants below), all represented by at-

---

1. No party has questioned the procedural regularity of the pleadings and this court expresses no opinion thereon. The evidence, which was presented in a disjointed manner, creates the impression that there was no reason for the petition to be filed and that the corporation, represented by the same attorney as the plaintiffs, felt it might derive a tactical advantage by presenting its claim to Tract A as an intervening defendant rather than as a plaintiff. See the

minutes of the board meeting of August 4, 1981, set forth later in the opinion.

2. Evidence at the trial disclosed that the undivided ¼ interest conveyed to Rebecca Sue Lorch by the deed of October 1, 1970, was acquired, by mesne conveyances, by the corporation and not by Charles Duncan, contrary to the latter's deposition.

torney L. Dwayne Hackworth, who also represented them in the trial court. The interests of the respective respondents are more allied than the pleadings below indicate. Wayne Duncan died intestate and only ½ of his 200 shares of the corporation descended to his widow Lorene. Wayne's other 100 shares descended to his six living brothers and sisters and the children of another sibling who predeceased him. Kenneth Duncan, plaintiff below and respondent here, and Charles Duncan, defendant below and respondent here, each inherited ⅐ of Wayne's "other" 100 shares in the corporation. Victory for Lorene on this appeal means that she is the owner of an undivided ¼ interest in Tract A (minus Tract B). A loss for Lorene would mean that the corporation is the owner of Tract A (minus Tract B) and Lorene owns only ⅙ of the shares of the corporation.

Additional facts to be stated should be considered in light of familiar principles pertaining to a resulting trust.

■■■ The corporation, as the party seeking the establishment of a resulting trust, had the burden to show its existence "by clear and convincing evidence to exclude all doubt from the mind of the court." *Ham v. Ham*, 691 S.W.2d 944, 945[1] (Mo.App.1985). To establish a resulting trust "an extraordinary degree of proof is required.... vague or shadowy evidence or a preponderance of the evidence is not sufficient." *Pizzo v. Pizzo*, 365 Mo. 1224, 295 S.W.2d 377, 385[10] (banc 1956).

■■■ A resulting trust is one implied by law from the acts and conduct of the parties and the circumstances which attend the transaction out of which it arises. *Meyer v. Meyer*, 285 S.W.2d 694, 698 (Mo. 1956). Although § 456.010[3] requires that express trusts of land be "manifested and proved by some writing," a resulting trust may be established by parol evidence. *Parker v. Blakeley*, 338 Mo. 1189, 93 S.W.2d 981, 987 (1936). Section 456.030 has the effect of excluding a resulting

trust, among others, from the operation of § 456.010. *Long v. Kyte*, 340 S.W.2d 623, 627 (Mo.1960).

■■■ A resulting trust "is created by operation of law from the facts of the transaction and not from an agreement, from what the parties do and never from what they agree to do." *Wenzelburger v. Wenzelburger*, 296 S.W.2d 163, 166[5] (Mo. App.1956). A resulting trust must arise, if at all, at the instant the deed is taken. "Unless the transaction is such that the moment the title passes the trust results from the transaction itself, then no trust results. It cannot be created by subsequent occurrences." *Pizzo v. Pizzo*, supra, 295 S.W.2d at 385[9].

"The test of the right to establish a resulting trust is the true ownership of the consideration upon which the title rests." *Davis v. Roberts*, 365 Mo. 1195, 295 S.W.2d 152, 157 (banc 1956).

■■■ "As between strangers, a purchase-money resulting trust arises against the grantee of real property in favor of the payor of the purchase money unless it was the payor's intent that no such trust should arise. The presumption of a resulting trust is rebuttable. The presumption is based upon the sound principle that, absent evidence to the contrary, it is not the intent of the payor to make a gift to the grantee." *Dougherty v. Duckworth*, 388 S.W.2d 870, 874 (Mo.1965). On the other hand, where a husband pays the consideration and causes the transfer to be made to his wife, the rebuttable presumption is that he intended to make a gift or a provision for her benefit. *Dallmeyer v. Dallmeyer*, 274 S.W.2d 250, 254 (Mo.1955).

"If the transaction is an express oral agreement providing for a conveyance of land, it becomes at once an express trust, and not a resulting trust; it cannot be established by parol evidence due to the prohibition of the Statute of Frauds.... However, existence of an express oral

---

**3.** All references to statutes are to RSMo 1978, V.A.M.S., and all references to rules are to Mis-souri Rules of Court, V.A.M.R.

agreement on the part of a grantee to hold land for the payor of the consideration does not destroy the resulting trust or cause the transaction to be judged as an attempt to create an express trust." *Hergenreter v. Sommers*, 535 S.W.2d 513, 518 (Mo.App. 1976).

■ If a resulting trust is established in a case where a person pays only a part of the purchase price, the person paying acquires a pro tanto interest in the real estate. *Isenman v. Schwartz*, 335 S.W.2d 112, 116 (Mo.1960); *Jones v. Anderson*, 618 S.W.2d 252, 255 (Mo.App.1981). If, as part of the purchase price, a note is given by the grantee at the time the deed is passed, and the resulting trust claimant thereafter makes payments on the note, *a resulting trust arises only if at the time the note was given there was an understanding that the claimant would pay it. Dallas v. Dallas*, 670 S.W.2d 535, 539[10] (Mo.App. 1984). (Emphasis added.)

■ Especially significant to the resolution of this appeal is the following principle: When the grantee of land borrows money from a lender and uses it to pay the purchase price, no resulting trust arises in favor of the lender, *Isenman v. Schwartz*, supra, 335 S.W.2d at 117[9]; *Ellis v. Williams*, 312 S.W.2d 97, 103[11] (Mo.1958); *Adams v. Adams*, 348 Mo. 1041, 156 S.W.2d 610, 614[7] (Mo.1941); 76 Am.Jur.2d Trusts § 212, p. 440; Restatement of Trusts, 2d, § 445, and this is true "even though it was understood the [grantee's] title should be held for the benefit of the [lender] as security for the money advanced by him, or even where there is an agreement to share in the profits." *Adams v. Adams*, supra, 156 S.W.2d at 614. "A loan is wholly inconsistent with the theory of a resulting trust." *Ellis v. Williams*, supra, 312 S.W.2d at 103.

Appellate review of this court-tried case is under the guidelines set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976) and Rule 73.01. The parties stipulated to certain facts and much of the significant evidence was documentary. There were few inconsistencies in the evidence and most of them arose from differences between the deposition testimony of Charles Duncan and his trial testimony. The record supports the following factual summary.

Beginning in the mid-1940s Wayne Duncan and his brothers, Charles and Kenneth, engaged in the agricultural limestone distribution business in Wayne County. In 1958 the corporation became a "Subchapter S corporation" under the Internal Revenue Code. From 1958, to the time of the trial, the parties stipulated, "the profits and losses of the corporation have been taxed directly to the individual shareholders for each calendar year." Charles Duncan "handled the paper work and business affairs of the corporation." Kenneth was primarily involved in "welding and mechanical work," and Wayne "operated the high lift and a truck."

Charles Duncan is a college graduate and a licensed real estate broker. Since 1962 he has been a director of a life insurance company. He is also a director of a holding company listed on the American Stock Exchange "with assets of 1.6 billion dollars." Kenneth Duncan testified that "Charles was in charge of all the contracts and the business part, ever since the company started."

In 1968 attorney Michael Lorch began his representation of the corporation and the three brothers individually. The various enterprises of the corporation and the brothers prospered. Charles testified that, beginning in 1968, "We became involved in developing shopping centers.... We had other real estate ventures ... in many counties and numerous plants." The enterprises were diverse and not all of the brothers were interested in all of them. Charles and Kenneth operated a partnership, Duncan Main Street Company. An enterprise known as McLane-Duncan was operated by Charles, Kenneth, Wayne and Dr. McLane. Duncan Rentals was, according to Charles, "a venture between the corporation and Lorch."

In 1970 a joint venture known as Duncan-Lorch was established. Jay Decker, a CPA for the corporation, also prepared the

records for Duncan-Lorch. Duncan-Lorch consisted of Charles, Wayne, Kenneth and attorney Lorch. Decker testified that "for tax purposes Duncan-Lorch was a joint venture ... a separate legal entity from the corporation. Duncan-Lorch had its own bank account and its own checks." Charles Duncan described himself as the "managing partner of Duncan-Lorch."

The purchase in 1970 of Tract A from the Rayfields was preceded by negotiations involving the Rayfields, attorney Lorch and the three Duncan brothers.

On September 30, 1970, the Rayfields entered into a written contract to sell Tract A to four buyers: Lorene, (Wayne's wife), Grace Duncan (Kenneth's wife), Mary Duncan, (Charles' wife), and Rebecca Sue Lorch, (Lorch's wife). The four women signed that contract as buyers. The purchase price was $90,000, with an initial payment of $10,000 and the balance of $80,000 represented by a note secured by a deed of trust.

On October 1, 1970, the Rayfields conveyed Tract A to the four women as tenants in common. On the same date the four women executed and delivered to the Rayfields their note in the amount of $80,000. The husbands did not sign the note. The Rayfields received a deed of trust securing the note. The deed of trust was signed by the four wives and the four husbands.

The note called for payments in installments, the first installment of $5,000 due on April 1, 1971. A similar amount was due on October 1, 1971, with subsequent installments of $10,000 payable annually thereafter. The final payment was made in 1978.

The corporation was not a party to any of the foregoing instruments, nor was it mentioned in them. Although the four women became individually liable on the note, the four husbands, in signing the deed of trust, recognized the validity of the lien but assumed no individual liability. Charles Duncan testified that "Lorch told me he put the names of the wives on the deed for tax reasons." On his deposition Charles Duncan testified that he knew that Tract A was being acquired for the Duncan-Lorch partnership and not for the corporation, but at the trial he said he did not learn until 1974 that the four women were named as grantees.

It was obvious from the instruments themselves, especially to a man of Charles Duncan's business acumen, that the four women received record title to Tract A and that the corporation was not mentioned. The deed of trust called for all eight signatures. There was no reason for Lorch and his wife to sign the deed of trust unless at least one of them had record title. In any event, Charles Duncan admitted that he learned, at least by 1974, how the record title stood.

The parties stipulated: "There has never been in existence any written or oral contract between Lorene Duncan, Grace Duncan, Mary Duncan and Rebecca Sue Lorch and [the corporation] relative to [Tract A] from October 1, 1970, to and including April 17, 1984."

▉ So far as the payments on the note are concerned, that stipulation, at least when coupled with a lack of evidence of any earlier agreement, means that the corporation may not validly claim a resulting trust on the basis of such payments, even if it made them. That is so because of the principle stated in *Dallas v. Dallas,* supra, that a resulting trust arises only if at the time the note was given there was an understanding that the corporation would pay it.

On February 28, 1974, the four women-grantees of Tract A conveyed Tract B to Kenneth Duncan and Grace Duncan. The four husbands joined in that deed. The Rayfields released Tract B from the lien of the deed of trust of October 1, 1970.

On March 13, 1978, Wayne Duncan died intestate and his 200 shares in the corporation descended in the manner previously described.

On February 14, 1979, Rebecca Sue Lorch and L. Michael Lorch were divorced. As part of the divorce settlement Rebecca

conveyed her interest in Tract A (minus Tract B) to Lorch.

On December 11, 1979, Michael Lorch died.

On May 9, 1981, the administrator of the estate of L. Michael Lorch, deceased, quitclaimed the decedent's interest in Tract A to the corporation. This was pursuant to a settlement between the administrator and Duncan-Lorch. Although Lorch owed Duncan-Lorch $75,700, Duncan-Lorch and the corporation paid the administrator $5,025.34 and Lorch's indebtedness was released.

On June 18, 1981, this action was instituted.

On August 4, 1981, the board of directors of the corporation held a special meeting. The minutes of that meeting included the following: "Charles Duncan then stated that he thought it would be a good idea if the corporation would intervene in the partition action which was currently pending at the instigation of Lorene Duncan for the Rayfield farm. Charles Duncan stated that he was of the opinion that the corporation should have the property deeded over to it to satisfy the *indebtedness of the Duncan-Lorch Partnership.*" (Emphasis added.)

Except for Tract B, on which Kenneth Duncan and his wife built a home, Tract A was essentially unimproved land. Charles Duncan testified that the corporation planned to develop the land, subdivide it and sell it. The corporation hired two engineering firms to do some preliminary survey work. The land remained as pasture and timber land until the trial, long after Wayne's death.

The joint enterprise of Duncan-Lorch carried on various real estate activities. Accountant Decker testified that Tract A was not included as an asset on the corporation's financial statements, that Duncan-Lorch for tax purposes was a separate legal entity from the corporation, and that the corporation was a general unsecured creditor of Duncan-Lorch. The $80,000

note was never shown as a liability of the corporation, nor did the corporation show any income from Tract A. His records showed Tract A as an asset of Duncan-Lorch in which attorney Lorch had a ¼ interest.

Charles Duncan admitted that two of the payments on the note were made from the Duncan-Lorch bank account, although other payments were made by the corporation. He testified that when he negotiated with the administrator of the Lorch estate he was negotiating "on behalf of Duncan-Lorch." On deposition he testified that he knew that Tract A was being acquired for the Duncan-Lorch partnership and not for the corporation.

On cross-examination by Lorene's attorney, Charles Duncan testified as follows:

Q. As we discussed earlier this morning, the money for the payment for [Tract A] came from Duncan Brothers, Inc. and it was preferable to borrowing the money from some lending institution or something like that, is that what you told me?

A. Yes sir.

Q. Is that what you told me?

A. The corporation was funding the partnership.

Q. I see. And then, of course, that goes right along with why you thought that [Lorch], and I suppose the rest of you knew that it should have paid Duncan Brothers, Inc. for those funds which it put out, is that right?

A. Right.

Q. When this money went out of the corporation throughout this eight years, were there any formal minutes or authorizations for that or was it just—

A. I would say that there were minutes made of it.[4]

Q. Was it the intention to pay back the corporation for this money at some time like when the land was developed or something like that?

A. Yes.

---

**4.** Minutes of the corporation for 1970, when the four women acquired title to Tract A, were not introduced in evidence. Charles Duncan testified they were lost.

Apparently no disharmony occurred among the parties until after Wayne's death in 1978. The land had not yet been developed by Duncan-Lorch and the corporation had not been "paid back."

Although the initial $10,000 payment to the Rayfields for Tract A was made with a check drawn on the corporation account, it is a reasonable if not inescapable inference that the $10,000 represented a loan from the corporation to Duncan-Lorch. The minutes of the special meeting of the board of directors of the corporation on August 4, 1981, support that inference. Authorities cited earlier hold that when the grantee of land borrows money from a lender and uses it to pay the purchase price, no resulting trust arises in favor of the lender.

Lorch was a partner in Duncan-Lorch but he had no interest in the corporation. The consideration for Tract A was money borrowed by Duncan-Lorch from the corporation, but Duncan-Lorch had "true ownership of the consideration," *Davis v. Roberts,* supra, and the corporation had none. If the deed to Tract A had been taken in the names of the four partners of Duncan-Lorch, no resulting trust would have arisen in favor of the corporation. Although the deed was taken in the names of the wives of the partners rather than the partners themselves, there is no issue here whether such a trust might have arisen in favor of the four men comprising Duncan-Lorch or whether such a trust did not arise for the reason that their respective spouses were the grantees.

The corporation's claim of resulting trust fails because it did not sustain the heavy burden of proof imposed upon it. Indeed the evidence permits, if it does not dictate, a finding of the nonexistence of a resulting trust.

This court holds that appellant Lorene owns, as a tenant in common, an undivided ¼ interest in Tract A (minus Tract B) and that the other parties have no interest in said undivided ¼ interest, and the trial court erred in holding otherwise. That erroneous ruling also caused the trial court to deny appellant's counterclaim and cross-claim for partition. The judgment is reversed and the cause remanded with directions to the trial court to reinstate appellant's counterclaim and crossclaim for partition and to take appropriate action thereon, all consistent with this opinion.

It is so ordered.

PREWITT, C.J., and TITUS, MAUS and CROW, JJ., concur.