Melvin B. WARD, Plaintiff–
Respondent,

v.

Tommy L. HUDGENS, Defendant–
Appellant.

No. 23032.

Missouri Court of Appeals,
Southern District,
Division Two.

July 25, 2000.

William B. Gresham, Richardson & Gresham, LLP, Poplar Bluff, for Appellant.

Monte C. Phillips, Doniphan, for Respondent.

PHILLIP R. GARRISON, Chief Judge.

This is an appeal from a declaratory judgment by which a resulting trust in favor of Melvin B. Ward ("Melvin") was imposed on land claimed by Tommy L. Hudgens ("Tommy"). We affirm.

Tommy is Melvin's nephew (Tommy's mother, Stella Hudgens ("Stella"), was Melvin's sister). Stella and Melvin had two other siblings, Cecil W. Ward ("Cecil"), and Robert L. Ward ("Robert"). Their parents, L.S. Ward ("Levi") and Lillie Ward ("Lillie"), obtained title to eighty acres in Ripley County in 1937. Levi and Lillie died intestate, survived by their four children, Stella, Melvin, Robert and Cecil, as their only heirs-at-law. On September 26, 1960, three of those siblings, Stella, Robert and Melvin, together with their respective spouses, conveyed their interests in the 80 acre tract to Cecil by warranty deed. No consideration was paid for that conveyance, which testimony indicated was for the purpose of protecting the property from the claims of spouses, children, creditors, and to keep the "family farm" as one contiguous tract. Cecil was and thereafter remained single, unmarried and without issue.

The trial court found that in 1946 Melvin and Cecil discussed purchasing a 141 acre tract of real estate, which adjoined the 80 acre family tract. That land was conveyed to Cecil in June 1946, and was apparently paid for by Cecil. The trial court found, however, that pursuant to an agreement reached between the two, Melvin began reimbursing Cecil for one-half of the purchase price and completed that reimbursement within six to nine months after it was purchased by Cecil.

The trial court found that in 1972 Cecil became concerned that the 221 acres titled in his name (the 80 acre and 141 acre tracts) could be subjected to tax liens or other judgments, and after discussions between Stella, Robert, Melvin and Cecil, that land was conveyed to Stella, her husband Earl, and Tommy as joint tenants. The evidence indicated that at the time of that conveyance Robert's mental health was failing and Melvin had eight children and a failing marriage. The following chronological events occurred thereafter:

July 11, 1977: a five acre tract from the 80 acre tract was conveyed by Stella, Earl and Tommy, without consideration, to Melvin and his wife.

October 27, 1978: three one acre tracts from the 80 acre tract were sold by Stella, Earl and Tommy and the purchase price was delivered to Cecil for his care.

February 12, 1979: a one acre tract from the original 80 acre tract was sold by Stella, Earl and Tommy and the purchase price was delivered to Cecil for his care.

March 1979: Cecil died intestate, leaving as his only heirs at law, Stella, Robert and Melvin.

November 28, 1979: a five acre tract from the original 80 acre tract was conveyed without consideration to Melvin.

May 22, 1984: a 26 acre tract from the original 80 acre tract was sold by Stella, Earl and Tommy who retained those proceeds.

January 1996: Stella died, single and unmarried, having been predeceased by Earl, leaving Tommy as her sole and only heir at law.

May 29, 1996: Tommy met with Melvin and requested Melvin's permission to sell timber from the property, but Melvin refused and requested that his interest in the property be conveyed to him. On the same date Tommy executed a "timber deed" to a third party.

After all of the conveyances, there remained a total of 181 acres of the original tracts that were titled in Tommy's name alone.

Melvin filed this suit in October 1997 against Tommy seeking a declaration of his rights in the property, and that the property was held by Tommy in a resulting trust for him. The trial court concluded that fee simple title of a 38.325% interest in the remaining 40 acres of the original 80 acre tract, or 15 ⅓ acres, is vested in Melvin. It also concluded that fee simple title to a 66.67% interest in the 141 acre tract, or 94 acres, is vested in Melvin.[1] Tommy appeals.

■ In reviewing a judgment entered in a court-tried case, we are to sustain the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The power to set aside a judgment on the grounds that it is against the weight of the evidence should be exercised only with caution and with a firm belief that the judgment is wrong. *Id.* Due deference should be afforded to the trial court's ability to judge the credibility of the witnesses. *Id.* at 31.

In his first point on appeal, Tommy contends that the trial court erred in estab-

1. There is no issue on this appeal about the trial court's mathematical calculations concerning the extent of Melvin's interest in either tract.

lishing a resulting trust because the record did not show the existence of such a trust by clear, cogent and convincing evidence because that finding was based solely on conversations which are "both too ancient and too loose, vague and casual to be credible"; that the evidence about consideration allegedly paid by Melvin was "too indefinite, vague and uncertain"; and that the consideration allegedly paid by Melvin was not paid at or before or reasonably soon after the deed was taken. He concludes that the establishment of a resulting trust was against the weight of the evidence and was an abuse of discretion. [4–6] A resulting trust is one implied by law from the acts and conduct of the parties and the circumstances which attend the transaction out of which it arises. *Duncan v. Rayfield,* 698 S.W.2d 876, 879 (Mo.App. S.D.1985). It is created from what the parties do and never from what they agree to do. *Id.* It must arise, if at all, at the instant the deed is taken, and cannot be created by subsequent occurrences. *Id.* As Tommy correctly points out, the burden is on the party seeking the establishment of a resulting trust to demonstrate its existence with clear and convincing evidence so as to exclude all doubt from the mind of the court. *Id.*

■ In support of this point, Tommy argues that the only evidence from which the court could have found a resulting trust was the "self-serving courtroom testimony of Melvin." He describes Melvin's testimony as "vague, contradictory, inconsistent and confusing," and as being based on oral conversations "which are ancient and far too remote in time to be credible." As indicated in *Fenton v. Walter,* 612 S.W.2d 17, 19 (Mo.App. S.D.1981), "[t]he testimony of a party may be accepted, although it is not required to be accepted, as the basis for the declaration of a resulting trust." There, like the instant case, the claim was that the self-serving testimony of the party did not meet the burden of proof necessary to establish a resulting trust, and this court noted that due regard

must be given to the trial court's opportunity to judge the credibility of witnesses. *Id.* at 19–20. We cannot ignore the discretion vested in the trial court in that regard.

Tommy also contends in this point that the existence of a resulting trust was not shown by clear, cogent and convincing evidence because the consideration paid by Melvin "was not paid at or before or reasonably soon after the deed was taken." This apparently refers to the acquisition of the 141 acre tract in 1946 in Cecil's name. Tommy's argument relates almost exclusively to the evidence concerning that tract, and particularly the alleged lack of specificity concerning the amount of the purchase price, whether it was a cash purchase, whether and to what extent Melvin contributed consideration for the purchase, and when Melvin made the final payment of his contribution. He says that the facts concerning those matters "were not testified to or were testified to only in vague, contradictory, inconsistent and confusing terms by Melvin."

A review of the record indicates that Melvin testified that the purchase price for the 141 acre tract was $10 per acre; that Melvin agreed to and did pay half of the purchase price to Cecil, and that Melvin's contribution was paid within a year. The trial court was entitled to believe this testimony.

■ Although Tommy's point seems to be directed at the weight of the evidence, he contends in the argument portion of his brief that Melvin's evidence failed to show that any consideration for the 141 acre tract was paid to Cecil at or before the time Cecil took title. He cites *Pizzo v. Pizzo,* 365 Mo. 1224, 295 S.W.2d 377, 385 (Mo. banc 1956), for the proposition that a resulting trust cannot be created by subsequent occurrences. He also cites *Fulton v. Fulton,* 528 S.W.2d 146, 154 (Mo.App. 1975), in support of his statement that when property is transferred to one person, no resulting trust arises merely be-

cause another person subsequently pays or assumes an obligation to pay for the property in whole or in part. These citations obviously refer to the fact that Melvin testified that although he and Cecil agreed when the 141 acres were bought that Melvin would pay half of the purchase price, he finished paying those sums approximately one year after Cecil made the purchase.

The trial court addressed this issue in its findings of fact and conclusions of law. It noted the general rule that a resulting trust never arises by virtue of an agreement, and in support cited cases including *Fulton*, now relied on by Tommy. The trial court then referred, however, to *Collins v. Link*, 562 S.W.2d 131, 135 (Mo.App. 1978). In *Collins*, the appellant argued, as does Tommy here, that a resulting trust is created only by operation of law and never from what the parties agree to do. *Id.* at 134–135. The court held that usually the claimed beneficiary must have furnished the consideration, or a fixed proportion of it, and there must be a presumed intent on the part of the legal owner to hold the property for such beneficiary. *Id.* at 135. The court then said that "[t]he fact that there was an agreement between the parties that certain acts be done or not done does not, of itself, preclude a resulting trust. That agreement constitutes a circumstance or fact, with others, from which a resulting trust may arise by operation of law." *Id.* The court there, as the trial court did here, distinguished *Fulton* by saying that statements to the effect that a resulting trust never arises by virtue of an agreement appearing in cases such as *Fulton* "pertain[ ] to an agreement to create a trust; not to an agreement that certain acts be done which in turn give rise to the creation of a trust by operation of law." *Id.* This same distinction was correctly made by the trial court here. Lacking a firm belief that the judgment of the trial court is wrong, we deny the first point.

■ In his second point on appeal, Tommy contends that Melvin was guilty of

laches "in that he had knowledge of the facts giving rise to his alleged rights in and to the subject property; that he delayed his assertion of those rights for an unreasonably long and unexplained period; and, that as a result of said unreasonable and unexplained delay, Tommy suffered a legal detriment, to wit: the loss of evidence which would support Tommy's position. . . ."

■ Invocation of the laches doctrine requires that a party with knowledge of the facts giving rise to his rights delays assertion of them for an excessive time and the other party suffers detriment therefrom. *Blackburn v. Richardson*, 849 S.W.2d 281, 289 (Mo.App. S.D.1993). In order for delay to support the doctrine of laches, it must be unreasonable and unexplained and must be shown to have caused disadvantage and prejudice to the defendant. *Id.* Laches, however, is not a favored doctrine and equity does not encourage its invocation to defeat justice, but only to prevent injustice. *Id.* at 289–290.

Here, Tommy asserts that the only evidence of the possibility of a resulting trust was Melvin's own testimony concerning transactions occurring in 1946 and 1960, and he also points out that this suit was not brought until after the death or incompetency of all other parties to those transactions. He points out that Melvin knew when he executed the deed conveying the 80 acres to Cecil that he was relinquishing his interest in the property, and he knew when Cecil conveyed all of the 221 acres to Stella, Earl and Tommy in 1972. Tommy, therefore, argues that Melvin knew of the facts giving rise to his interest in the total acreage no later than 1972, but he did not object to any of the subsequent conveyances of small acreages from the entire parcel of land, and did nothing to assert his rights until after Tommy had no opportunity to present any contravening evidence from Stella, Cecil, Earl, or Robert.

Melvin points out, however, that there was no evidence of a dispute concerning

his interest in the land until Tommy approached him in May 1996 about giving permission to permit timber to be cut from the property. The trial court found that Melvin never intended to relinquish his claim to, nor make a gift of, his interest in the land when the various conveyances were made, but instead believed that the property would be held for the benefit of each member of the family. It also found that Tommy met with Melvin on May 29, 1996, and requested Melvin's permission to sell timber from the property, but that Melvin refused that request and instead requested that Tommy convey to him his interest in the property.

Under these findings, we are unable to conclude that Melvin's delay in asserting his claims in this action were unreasonable and unexplainable. *See Blackburn,* 849 S.W.2d at 289. The evidence indicated that Melvin had a third grade education and had not known that he needed to seek relief concerning his interest in the farm which he understood was being held for him and the others in his family. We cannot conclude that the trial court erred in the manner argued by Tommy. The second point is denied.

The judgment is affirmed.

MONTGOMERY, P.J., and BARNEY, J., concur.