Tamara Dee LEONARD; Plaintiff,

Alan and Donna Leonard, Appellants,

v.

Christopher and Christy LEONARD; Respondents,

Firstar Bank, N.A., Appellant.

Nos. WD 61298, WD 61299.

Missouri Court of Appeals, Western District.

April 29, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 1, 2003.

Application for Transfer Denied Aug. 26, 2003.

Tamara Leonard, pro se.

Mark Abbott, Columbia, MO, for Appellants.

Thomas M. Schneider, Columbia, MO, for Respondents.

Before THOMAS H. NEWTON, P.J., ROBERT G. ULRICH and EDWIN H. SMITH, JJ.

ROBERT ULRICH, Judge.

Tamara Leonard ("Tamara"), sister of Christopher Leonard, filed suit against Christopher and Christy Leonard ("Christopher" and "Christy" respectively), husband and wife, for partition of real estate, and Alan and Donna Leonard ("Alan" and "Donna" respectively), parents of both Christopher and Tamara, intervened as plaintiffs. Firstar Bank, N.A. ("Firstar Bank") was interpleaded by Christopher and Christy as a third party defendant. The trial court's judgment granted fee simple to the real property at issue to Christopher and Christy and declared that Alan, Donna, Tamara, and Firstar Bank had no right, title or interest in the prop-

erty. The judgment also declared that Firstar Bank had no interest in the real property and no lien on the property despite a deed of trust reciting the legal description of the property filed of record in Howard County, the situs of the real property. Alan, Donna, and Firstar Bank appeal the judgment. Tamara does not appeal. The issue presented in this judge-tried case is whether a resulting trust in favor of Christopher and Christy resulted from the conduct of the parties and the applicable facts at the time of the closing of the bankruptcy sale of the property. The judgment of the trial court is reversed.

## Standard of Review

 Because this was a judge tried case, the judgment of the trial court will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "Because the trial court is in the best position to weigh all the evidence and render a judgment based on the evidence, the judgment is to be affirmed under any reasonable theory supported by the evidence." *Love v. Love*, 75 S.W.3d 747, 754 (Mo.App. W.D. 2002) (quoting *Guier v. Guier*, 918 S.W.2d 940, 946 (Mo.App. W.D.1996), *rev'd on other grounds by Harrison v. King*, 7 S.W.3d 558 (Mo.App. E.D.1999)). On appeal, evidence is viewed in the light most favorable to the trial court's judgment. *Jones v. Jones*, 10 S.W.3d 528, 532 (Mo.App. W.D. 1999). "When there is conflicting evidence, the trial court has the discretion to determine the credibility of the witnesses, accepting or rejecting all, part, or none of the testimony it hears." *Love*, 75 S.W.3d at 754 (quoting *Guier*, 918 S.W.2d at 946).

## Factual and Procedural Background

Alan, appellant, and Christopher, respondent, attended a bankruptcy sale of American Minerals, Inc., a company with which Alan had done business and against whom Alan had a claim in bankruptcy, on June 3, 1996. Alan successfully bid for a tract of real property for $46,500. Christopher was engaged to Christy at the time of the bankruptcy sale. They were subsequently married. Alan also purchased a doublewide trailer that was located on the property for $2,000. Both Alan and Christopher intended at the time of the bankruptcy sale that the trailer would be the marital home of Christopher and Christy. Certain other personal property was located on the land, and the trial court determined title to it, but ownership of the personal property is not the subject of this appeal. The parties stipulated that the trailer is a part of the land. The closing on the sale of the real property did not occur until August 27, 1998, over two years after the bankruptcy sale.

Following the sale, Christopher borrowed approximately $13,500 from Alan, his father, to make improvements to the trailer. Both Alan and Christopher contributed time and labor to improve the real property. At some point, Christopher and Christy occupied the trailer as their marital home and have continued to occupy it during the pendency of this action.

Sometime prior to the closing, Alan assigned his right to purchase the property to Christopher and Christy. Accordingly, at the closing, the bankruptcy trustee conveyed legal title to the land to Christopher and Christy. The funds exchanged at closing consisted of a down payment of $2,000, and a new loan from Commerce Bank, N.A. to Christopher and Christy in the sum of $60,000. Christopher and Christy executed a purchase money deed of trust in favor of Commerce Bank to secure the payment of the promissory note in the sum

of $60,000. They also signed a warranty deed conveying an undivided one-half interest in the real property to Tamara at the time of closing.

The property at dispute in this case has been used for strip mining. Between the time of the sale of the property and the closing, the State of Missouri reclaimed the property. After reclamation, the property was significantly improved. Alan testified that the fair market value of the property increased after reclamation to approximately $150,000. He also claimed that he and Christopher agreed that Christopher would pay $60,000 to receive title to the doublewide trailer, one-half of the land, and a smaller shed located on the property. This sum included payment of the previously made $13,500 loan from Alan to Christopher to improve the doublewide trailer. The other one-half interest was to be transferred to Tamara to secure Alan's interest in the larger shed located on the property, the equipment purchased at the sale and located on the property, and his apparent equity in the real property. After closing, Alan claimed he was the rightful owner of the undivided one-half interest that was deeded by Christopher and Christy to Tamara, that Tamara held title to the interest in the real property in his behalf, and that this undivided one-half interest should not be charged with any of the indebtedness constituting the $60,000 new loan made by Commerce Bank, N.A. He also claimed that he and Tamara had agreed that their interest in the undivided one-half interest in the property would be vested in Christopher.

The events surrounding the purchase of the property were in dispute at trial. Christopher testified that Alan experienced financial problems prior to the closing and that he did not want a thirty-year lien against the real property. Another 150 acres of real property, titled in Christopher's name and located north of the property at issue in this suit, was affected by Alan's financial difficulties and also affected the relationship of the parties. Alan and Christopher agreed that Christopher would assume the purchase of the real property subject to this suit and that Tamara would receive title to the 150–acre tract of land. Alan was to receive the use of the large shed on the subject property for payment of the taxes and insurance on the subject property. Christopher testified that his father informed him that the transfer of the undivided one-half interest in the subject property was like an insurance policy that would protect him against creditors. He also testified that Alan told him that he would receive title to this one-half interest when he requested it. Although Christopher and Christy transferred title to the 150 acres to Tamara, she testified that she was holding title in the 150 acres for Alan. Alan testified that he held the 150 acres in Tamara's name. The trial court concluded that Alan was the legal owner of that property.

Both Donna and Christy testified that the purpose of granting Tamara the undivided one-half interest of the real property at dispute in this case was to secure Alan's interest in equipment located in the large shed.

After the closing on the property, the relationship between Alan and Christopher deteriorated. Eventually, an order of protection was obtained that excluded Alan from the real property. Tamara filed suit on June 7, 2000, to partition the property. She testified at trial that she claimed a one-half interest in the property free of any encumbrances, including the deed of trust securing the $60,000 loan used in part to acquire the property. She also asserted a claim for breach of warranty against Christopher and Christy because the warranty deed that she received at

closing did not refer to the deed of trust in favor of Commerce Bank, N.A. Present at the closing were Christopher, Christy, Alan, and a representative of Commerce Bank, N.A., Tim Ferguson.

After commencing the partition suit, Tamara conveyed her undivided one-half interest in the subject property by warranty deed to Alan and Donna. Alan and Donna were then permitted to intervene in the partition suit. They claimed ownership of the property without encumbrances. Before Tamara conveyed her interest in the property to Alan and Donna, they claimed equitable title, and post conveyance, they asserted legal title to the property. Upon receipt of the title from Tamara, they executed a deed of trust encumbering the claimed undivided one-half interest in favor of Firstar Bank, to secure a note in the amount of $90,000. The loan proceeds were deposited into Tamara's account. The money was then transferred as payment of an existing debt on the 150 acres to the north of the property subject to this suit. The trial court determined that Alan effectively transferred the $90,000 preexisting debt on the 150 acres to the property subject to this suit. The court concluded that the practical effect was to place Alan and Donna in a superior position and to chill any prospective sale.

Christopher and Christy filed a third party petition against Firstar Bank to quiet title to the subject property. They wanted to extinguish any lien in favor of Firstar Bank resulting from the deed of trust filed to secure the note executed by Alan and Donna. They claimed that Firstar Bank's agent, Tim Ferguson,[1] had actual knowledge that they had paid the entire purchase price for the 75 acres and that the bank was on notice of their other claims. The trial court entered a default judgment against Firstar Bank for failing to appear at trial.

Christopher and Christy claimed ownership of all legal and equitable interest in the property despite Tamara's, Alan's, and Donna's holding title to the property and improvements. They asserted that a resulting trust occurred at the time of sale. Christopher and Christy further claimed that Tamara, Alan, and Donna were holding the property in trust for their benefit.

The trial court found that Christopher and Christy furnished the entire purchase price for the subject real estate, maintained insurance on the property, made all the mortgage payments, and made all real estate taxes upon the property with one exception. Alan and Donna may have made a partial real estate tax payment after acquiring legal title to the one-half interest. This was disputed at trial. The court further found that Christopher and Christy had repaid Alan the $13,500 that they borrowed from him to improve the doublewide trailer. The trial court noted that Alan had made a notation at the closing that supported the conclusion that Christopher and Christy repaid the loan and all monies owed to Alan. Additionally, the trial court found that the transfer by Christopher and Christy of an undivided one-half interest to Tamara was made solely as a convenience to Alan to facilitate his access to the large shed and to his equipment on the property. The transfer of title was not intended to secure any equity interest as a consequence of the property's increased value due to its reclamation by the State of Missouri, the court found. The court found that Alan, Donna, and Tamara had no interest in the property

---

1. The trial court noted that it was curious that both Commerce Bank's and Firstar Bank's agent was named Tim Ferguson.

and that they held a resulting trust for the benefit of Christopher and Christy. The court stated that the resulting trust arose at the time the original deed was passed at the closing on August 27, 1998, and that the subsequent mortgage from Alan and Donna to Firstar Bank did not constitute a lien against the property. Thus, the court determined and found that Alan, Donna, Tamara, and Firstar Bank were not entitled to relief and that they had no interest in the property. This appeal by Alan, Donna, and Firstar Bank followed.

## Analysis

Appellants Alan and Donna Leonard's sole point on appeal is that the trial court erred in finding a resulting trust in favor of Christopher and Christy because it was a misapplication of the law in Missouri to find a resulting trust existed in that under the facts of this case a resulting trust could not have arisen and because clear and convincing evidence does not support the trial court's finding.

■ A resulting trust is one implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and surround the transaction out of which it arises. *In re Marriage of Hunt*, 933 S.W.2d 437, 442 (Mo.App. S.D.1996) (citing *Prange v. Prange*, 755 S.W.2d 581, 582 (Mo.App. E.D.1987)). It is created from what the parties do and never from what they agree to do. *Ward v. Hudgens*, 22 S.W.3d 260, 263 (Mo.App. S.D.2000) (citing *Duncan v. Rayfield*, 698 S.W.2d 876, 879 (Mo.App. S.D.1985)). A resulting trust arises "where one pays the purchase price for land with legal title taken in another." *In re Marriage of Hunt*, 933 S.W.2d at 442. The theory behind a resulting trust is that one who provides purchase money for property intends to receive the benefit of that property. *Tomasovic v. Tomasovic*,

845 S.W.2d 661, 664 (Mo.App. E.D.1992) (citing *Dallas v. Dallas*, 670 S.W.2d 535, 539 (Mo.App. E.D.1984)). A resulting trust arises, if at all, the instant a deed is taken. *Correale v. Hall*, 9 S.W.3d 624, 627 (Mo.App. E.D.1999) (quoting *Dallas*, 670 S.W.2d at 539). It cannot be created by subsequent occurrences. *Ward*, 22 S.W.3d at 263 (citation omitted). Clear and convincing evidence must exist in order for a court to find a resulting trust. *Prange*, 755 S.W.2d at 592.

■ Appellants Alan and Donna claim that the trial court erred in finding a resulting trust in favor of Respondents because the second element of a resulting trust was not satisfied under the facts of this case, namely that the deed conveying the property was initially taken in Respondents' names and not in the name of another party. They claim that this factor defeats the trial court's finding of a resulting trust because the two elements of a resulting trust did not occur at the same time. Respondents counter that the deed conveying a one-half interest in the property to Tamara was executed at the same time that Respondent paid the purchase price for the property even though the deed was initially titled in their name by the seller to whom they paid the consideration for the sale. They claim that the two contemporary events necessary to constitute a resulting trust need not occur simultaneously to effect a resulting trust. Rather, they claim that the two events can arise out of the same transaction.

As noted, a resulting trust arises when one party pays the purchase price for property that is titled in the name of another. For example, A purchases property from C and title to the property is deeded to B. In this case, unlike the example, Respondents paid the purchase price of the property to the seller and the seller deeded title to the property to Respon-

dents. Thus, the Respondents paid the purchase price and received title to the property in their name at the same time. Respondents, therefore, owned the property in its entirety at closing. A resulting trust did not arise because title to the property was initially deeded to Respondents. In order for a resulting trust to have occurred, title to the property initially must have been deeded to Tamara by the seller and not to Respondents despite Respondents tendering the purchase price to seller. Legal title passed to Respondents at closing and not to Tamara.

A resulting trust arises, if at all, at the instant the deed is taken. *Dallas,* 670 S.W.2d at 539. Respondents' argument that a resulting trust occurred notwithstanding the fact that the two elements of a resulting trust did not occur simultaneously is unavailing.

The sequence of events in this case resulted in two transactions. The first transaction occurred when Respondents paid the purchase price for the property and received title to the property in their name. The second transaction occurred when Respondents deeded a one-half interest in the property to Tamara. Title to Tamara occurred after the Respondents had received title to the property deeded in their names. Although both transactions occurred at closing, they were not simultaneous and could not create a resulting trust.

Respondents contend that they made all of the mortgage payments on the property, paid property tax, and made improvements to the property as well as the mobile home located on the property. They argue that such actions establish a resulting trust. Respondents cite *Tomasovic v. Tomasovic,* 845 S.W.2d 661 (Mo. App. E.D.1992), for this proposition. Specifically, they claim that Appellants Alan and Donna have no interest in the property because they made no mortgage or tax payments on the property. Respondents further argue that the fact that Appellants Alan's and Donna's names appear on the deed containing the one-half interest of the property establishes that they were holding the property in trust for Respondents. A key difference between this case and *Tomasovic* is that the deed in *Tomasovic* was in the parents' names when the children paid the purchase price for the property. Here, as stated above, the deed was titled in Respondents' names when the purchase price for the property was paid. Subsequent to that transaction, Respondents conveyed a one-half interest in the property to Tamara. She then conveyed the one-half interest in the property to Appellants. Appellants Alan and Donna did not hold a one-half interest in the property in resulting trust for Respondents because the deed was not titled in their name at the time that Respondents paid the purchase price for the property.

Respondents also claim that they did not intend for the second transaction to be a gift to Tamara when they conveyed the one-half interest of the property to her. They argue that they purchased the property for their own benefit. Whether relief is available to Respondents on the second transaction with Tamara independent of the first transaction is not an issue raised on appeal by Respondents and is not addressed here. Appellants Alan and Donna's sole point on appeal is granted.

In point two of Respondents' brief, they claim that Appellant Firstar Bank is not entitled to relief upon appeal because it failed to file a motion to set aside the default judgment entered against it and that such a motion is a prerequisite to appealing a default judgment. The trial court entered a default judgment against Appellant Firstar Bank on January 7,

2002. Firstar Bank filed an appeal on April 11, 2002. The issues raised in Appellants' brief address only Alan and Donna Leonard's claims. Appellant Firstar abandoned its claim as none of its issues on appeal are presented in a brief. Inclusion of Firstar Bank's claims in the brief would not have been successful, however, because Firstar Bank failed to file a motion in the trial court to set aside or vacate the default judgment.

Rule 74.05(d) governs when a default judgment may be set aside and provides, in relevant part:

Upon motion stating facts constituting a meritorious defense and for good cause shown, ... a default judgment may be set aside. The motion shall be made within a reasonable time not to exceed one year after the entry of the default judgment. Good cause includes a mistake or conduct that is not intentionally or recklessly designed to impede the judicial process. An order setting aside ... a default judgment may be conditioned on such terms as are just, including a requirement that the party in default pay reasonable attorney's fees and expenses incurred as a result of the default by the party who requested the default.

Missouri Rules of Civil Procedure (2002). "A default judgment is not appealable in the absence of a motion to set aside or vacate." *Niemann v. Kasch,* 740 S.W.2d 706, 707 (Mo.App. E.D.1987) (quoting *Vonsmith v. Vonsmith,* 666 S.W.2d 424, 424 (Mo. banc 1984)), *after transfer,* 666 S.W.2d 426 (Mo.App.1984). The direct appeal of a default judgment is not permitted. *Vonsmith,* 666 S.W.2d at 424. Respondents claim that Appellant Firstar Bank failed to file a motion to set aside or vacate the default judgment. The legal file on appeal supports this assertion because it contains no record of a motion by Appellant Firstar Bank to set aside or vacate the default judgment. The purpose behind the rule has been characterized as follows:

[T]he rule serves to ensure that there will be a proper allocation of responsibility between a court of appeals and the trial court. If the defendant is permitted to raise his objections to the trial court's decision for the first time on appeal, the court of appeals will be assuming original, not appellate; jurisdiction.... The trial court "cannot be said to have committed an error when ... [its] judgment was never taken into consideration ..." [*Vonsmith,* 666 S.W.2d at 424 *quoting Gelston v. Hoyt,* 13 Johns. 561, 566–7 (N.Y.1816)]. By requiring the defendant first to file a motion to vacate, the court is permitted to review its decision before the matter is submitted to the court of appeals.

*Niemann,* 740 S.W.2d at 708 (quoting Laughrey, *Default Judgments in Missouri,* 50 Mo.L.Rev. 841, 866 (1985)). Because Appellant Firstar Bank failed to file a motion to set aside or vacate the default judgment, it is entitled to no relief on appeal. The appeal of Firstar Bank is dismissed.

Clear and convincing evidence of a resulting trust is not established. The trial court misapplied the law to find that Appellants Alan and Donna Leonard held the property at dispute in a resulting trust for Respondents. For that reason, the portion of the judgment finding for Respondents is reversed.

All concur.